### UECK v. MEATZ.

1. TRIAL—REPLEVIN—INSTRUCTIONS—ESTOPPEL.

   In replevin for a motorcycle which plaintiff had sold on contract, reserving title until fully paid for, which the purchaser later sold to defendant on contract without informing him as to the condition of his title, it was defendant's theory, supported by evidence, that plaintiff was estopped from asserting his title by conduct as follows: That plaintiff saw the motorcycle in defendant's possession about the time he bought it, and learned what he had paid for it; that about three weeks later defendant went to plaintiff's shop and was informed that it had not been paid for, but nothing was said about the contract or that title had been retained; that later defendant paid the balance he owed in plaintiff's presence and received a receipt in full written by plaintiff and signed by the original purchaser; that plaintiff made out an application for registration of the motorcycle in which he described defendant as the owner; *held*, that defendant's requests, or their equivalent, properly presenting his theory, should have been given, and it was error for the court to refuse them.

2. ESTOPPEL—ACTS—INTENT.

   Where the question involved was whether the conduct of plaintiff was such as to lead a reasonably prudent man to

believe that he had parted with his title, and thus .estop him from maintaining replevin, it was erroneous for the court to instruct the jury that he would be entitled to recover unless he had knowingly and intentionally waived his rights, as it is the act and not the intention that governs.

Error to Berrien; Bridgman, J. Submitted June 12, 1916. (Docket No. 42.) Decided July 21, 1916.

Replevin in justice's court by Richard Ueck against Rudolph Meatz for a motorcycle. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*O'Hara & O'Hara,* for appellant.

*Welden Bros.,* for appellee.

The plaintiff, who resides in Benton Harbor, is the proprietor of two motorcycle garages, one in Benton Harbor and the other in St. Joseph. On September 12, 1914, he sold a motorcycle to one Albert Krieger for $252, receiving $100 in cash and the balance payable monthly under a written contract of sale, reserving title in the vendor until fully paid. In January or February, 1915, Krieger offered to sell the motorcycle to the defendant, who is a Russian, and who is unable to either read or write English. A sale was agreed upon, the price being fixed at $145, of which $90 was paid in cash, and the motorcycle was delivered to the defendant. Three weeks later the defendant paid $20 more to Krieger. It was the claim of the defendant, and was supported by his testimony, that when he received the motorcycle he took it to the plaintiff's garage for some repairs; that he there had conversation with the plaintiff, who asked him how much he

paid for the motorcycle, and that he told him $145, and that he had purchased the machine from Krieger. It is further claimed that about three weeks later he again went to the plaintiff's shop, and there was told by him that Krieger had not paid for the motorcycle as yet, but that nothing was said about the contract or that title had been retained. It is further claimed that on the eighth of March the plaintiff, the defendant, and one Mier, a friend of the defendant, all went to the house of Krieger, where the defendant offered to pay the balance he owed on the machine if the plaintiff and Krieger would give him a receipt. Krieger not being able to write, plaintiff wrote the receipt and Krieger signed it. It is the claim of the plaintiff that he told defendant that he could not give him a receipt, but both defendant and Mier state that the defendant asked plaintiff to give him a receipt, and Mier states that plaintiff said: "I write—I give him a receipt; * * * I sign it too." The defendant thereupon paid him the $35 which was due according to his agreement and took a receipt which was as follows:

> "March 8, 1915.
> "Received of Rudolph Meatz, one hundred and forty-five dollars. Paid in full for one 1914 twin-cylinder Indian motorcycle.
> "$145.00                    ALBERT KRIEGER."

On April 1st following plaintiff made out an application for registration of the motorcycle (which was necessary under the automobile license law) for the defendant, he not being able to write. In this application it is stated that the defendant is the owner of the machine. An action in replevin for the motorcycle and equipment was brought by the plaintiff in the justice's court, where judgment was had for the plaintiff, and on appeal by the defendant the case was tried in the circuit court before a jury, and judgment for six cents damages was given for plaintiff. The errors re-

lied upon, raised by proper assignments of error, relate to the charge of the court and to the claimed failure of the court to present the defendant's theory of the case in the charge as given.

KUHN, J. (*after stating the facts*). It was the theory of the defendant, which finds support in the evidence, that when defendant bought the machine from Krieger he had no knowledge that plaintiff, or any other person, had any interest therein; that plaintiff within a few days saw the wheel in defendant's possession, and said nothing to the defendant; that at the time the plaintiff drew the receipt and defendant paid the $35 still owed by him to Krieger the plaintiff said nothing about the contract, and led the defendant to believe that by making the payment he had acquired full and perfect title to the machine; that thereafter, when the plaintiff made out the application of registration for the machine, which was sent to the secretary of State and in which application the defendant was described as owner of the machine, nothing was said about the contract, or that the plaintiff claimed any right to the machine. It is the claim of the defendant that if the jury should find these facts to be true from the evidence, the plaintiff had by his conduct estopped himself from now asserting his title to the wheel, and various requests, incorporating this theory of the case, were submitted by defendant's counsel to the court. Among others, was the following request to charge:

"One who, having contracted for the sale of personal property, stands by and permits his vendee to sell the same to an innocent purchaser is estopped to assert, as against the latter, that title had not passed under the contract, or that he is entitled to a lien for the purchase price."

We are of the opinion that this request, or its equiva-

lent, should have been given. The trial judge in his charge said the following with reference to this claim:

"Now, the plaintiff, under these circumstances, would be entitled to recover in this action in any event unless he has waived his rights; unless he has knowingly and intentionally done such acts as waive his rights under this contract, released his title to Meatz, and released all claims against the machine, he would be entitled to recover. And in such case your verdict would be for the plaintiff, with nominal damages. On the other hand, if the jury should find that he has knowingly and intentionally waived his rights, then your verdict must be for the defendant, and in that case your verdict would be that the plaintiff return the property and pay to the defendant such damages as he may have sustained."

And thereupon the following occurred:

"*The Court:* Swear an officer.

"*Mr. O'Hara:* Oh, just a moment! Your honor has not covered our theory of the case at all. Those requests there.

"*The Court:* Very well. Those requests will be refused, and note an exception.

"*Mr. O'Hara:* Your honor has used the word 'Intentionally.'

"*The Court:* I did.

"*Mr. O'Hara:* I take an exception.

"*The Court:* Certainly, certainly. Let an officer be sworn."

We do not think that this is a correct exposition of the law with respect to the defendant's theory of the case. While it is true that the claims of the defendant were strenuously denied by the plaintiff, nevertheless the defendant clearly had a right to have his theory submitted to the jury with proper instructions of the law applicable thereto. We do not think that it was necessary, as a matter of law, for the jury to find that the plaintiff had "knowingly and intentionally" parted with his title. The question rather is, Was the

conduct of the plaintiff such, in relation to this transaction, as to lead a reasonably prudent man to believe that he had no claim or interest in the machine in question? In discussing the question of estoppel in a case of this kind this court said, in *Vanneter* v. *Crossman*, 42 Mich. 465 (4 N. W. 216):

"It is the act and not the intention that governs. The owner of property may silently stand by and see it sold as the property of another, and this without any intention on his part of misleading or injuring any one, and yet the result would be the same."

See, also, *Miller* v. *Ross, Bradley & Co.*, 107 Mich. 538 (65 N. W. 562); 16 Cyc. p. 722.

For the error thus pointed out, the judgment must be reversed, and a new trial granted, with costs to the appellant.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.