## CRAIG v. CROSSMAN.

1. VENDOR AND PURCHASER — LAND CONTRACTS — ASSIGNMENTS — PROPERTY RIGHTS—SPECIFIC PERFORMANCE.

   A contract in writing whereby the vendor of certain city lots agreed to deed same to the vendee, or any person she might designate in writing, within one year, upon payment of a stipulated sum with amount of taxes or other expenses added thereto, *held*, to create a valid property right in the vendee entitling her assignee to specific performance thereof.

2. SAME—CONSIDERATION PAID BY ASSIGNEE.

   In proceedings against the vendor and his grantor by the assignee of said contract to specifically enforce the same, defendants cannot raise the question of consideration paid by said assignee.

3. SAME—DEFEASANCE EXECUTED AFTER MAKING OF CONTRACT— NOTICE.

   A defeasance executed by the vendor to his grantor after the execution of the contract, which was never recorded, and of which plaintiff had no notice, could not affect his rights under said assignment, and its character is therefore unimportant.

4. SAME—ESTOPPEL—DEEDS.

   Where vendor's grantor was present and assisted in making said contract, he is estopped, as against the vendee and those succeeding to her rights, to deny that his deed was an absolute one, which on its face it purported to be.

5. ESTOPPEL—ACTS OF OWNER.

   Where the owner of land stands by and knowingly permits his property to be mortgaged or sold by another, to one who is, to the owner's knowledge, relying on the apparent ownership of the person executing the conveyance, such conduct will estop the owner from asserting his title against the mortgagee or grantee.

6. VENDOR AND PURCHASER—LAND CONTRACTS—ASSIGNMENTS.
   *Held*, that said contract was assignable.

---

On effect of defeasance against creditors of grantee of failure to record, see note in 5 L. R. A. (N. S.) 387.

On the question of insurable interest of holder of option on property, see note in L. R. A. 1918A, 393.

7. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
   CEASED.
   Under 3 Comp. Laws 1915, § 12553, testimony of defendants
   as to a notice served by them upon the vendee (since de-
   ceased) attempting to terminate her rights in a land con-
   tract was incompetent as equally within the knowledge of
   the deceased.

8. SAME—"OPPOSITE PARTY"—ASSIGNMENTS.
   An assignee of deceased, under the law, is not an "opposite
   party," but stands in deceased's shoes.

9. VENDOR AND PURCHASER—OWNERSHIP OF INSURANCE MONEY.
   Upon payment of the full purchase price, plaintiff was en-
   titled to receive the insurance money collected for dam-
   age by fire to a building on said lots, where the vendor
   had charged the premiums against the vendee.

Appeal from Wayne; Shepherd (Frank), J., pre-
siding. Submitted October 29, 1919. (Docket No.
60.) Decided April 10, 1920.

Bill by Lavina B. Donaldson, substituted for Don-
aldson Craig, against John M. Crossman and another
for the specific performance of a land contract, and
for an accounting. From a decree for plaintiff, de-
fendants appeal. Affirmed.

*Henry B. Graves,* for plaintiff.

*James H. Pound,* for defendants.

STONE, J. The bill of complaint herein was filed
to obtain specific performance of a written agreement
by the defendant Crossman to convey to Maria Mac-
donald three lots in Highland Park, Wayne county,
known as lots 1, 2 and 3 of H. R. Blackwood's sub-
division of outlot 1 of Yeaman's addition to Highland
Park village in quarter sections 15 and 26 of the
10,000-acre tract. The defendant Campbell was made
a defendant to bar claims of ownership made by him

of the lots in question. Maria Macdonald subsequently transferred her rights to the plaintiff.

The following statement of facts is compiled from plaintiff's brief:

The lots were purchased by defendant Campbell in 1902, and he sold them on land contract to Maria Macdonald in 1906. She commenced the erection on' the lots of a store building and house, and therein became indebted to George W. Ross and the Michigan Lumber Company for material used in the construction of the buildings, which were not entirely completed in the first place. This indebtedness she was unable to pay, and she was also delinquent in her payments on the land contract. In 1908 a settlement was made by Campbell deeding the lots to George W. Ross, who borrowed thereon for the use of himself and Campbell from the Capitol Savings & Loan Association $3,200 secured by mortgage. Defendant Crossman, who had advanced money to Campbell, obtained a second mortgage on the property. The old land contract to Maria Macdonald was surrendered by her, and a new land contract, dated March 3, 1908, was given her by George W. Ross. Ross also gave defendant Campbell a written statement that he would transfer the property back to Campbell, when the latter took care of the first mortgage on the property. Maria Macdonald continued in possession of the property. In the spring of 1912 Maria Macdonald was again delinquent in her payments on her land contract, and Ross, who had completed the buildings, insisted on being paid and relieved of the mortgage to the Capitol Savings & Loan Association. Defendant Campbell applied to Crossman for further assistance, which was granted, and the following things were done:

Crossman advanced $5,000, and with this money the mortgages on the lots were discharged and Ross was paid. The latter thereupon deeded the lots to

Campbell and Campbell deeded the lots to Crossman, and certain insurance policies on the buildings were assigned to Crossman. These discharges and deeds were all recorded on April 27, 1912, although the deeds bear date April 9, 1912.

The land contract to Maria Macdonald was assigned by Ross to Crossman. Thereupon Crossman and Maria Macdonald made a new agreement relating to the lots, which reads as follows:

"This contract, made this third day of April, A. D. 1912, by and between John M. Crossman, of Detroit, Michigan, party of the first part, and Maria Macdonald, of Highland Park, Michigan, party of the second part,

"Witnesseth, that the said party of the first part in consideration of the assignment to said party of the first part, of any and all rights of said party of the second part, and a certain land contract made between said party of the second part, and George W. Ross, of Detroit, Michigan, on the third day of March, A. D. 1908, in which contract the said second party is in default and arrears, does hereby agree that he shall and will at any time within one year from the date hereof, at the written request of the said party of the second part, her heirs, executors or administrators, execute and deliver to said party of the second part, her heirs, executors or administrators or to any person or persons the said party of the second part, her heirs, executors or administrators may direct in writing, a good and sufficient warranty deed, except as to acts committed by said Maria Macdonald on or after March 3, 1908, and an abstract showing good marketable title of the following described land, situated in Highland Park, county of Wayne, State of Michigan, to-wit:

"Lots one (1), two (2), three (3), of H. R. Blackwood's subdivision of outlot one (1) of Yeaman's addition to Highland Park village, subdivision of quarter sections fifteen (15) and twenty-six (26) town one (1) south of range eleven (11) east, ten thousand acre tract.

"For the sum of fifty-two hundred sixty-one dollars

209—Mich.—30.

($5,261), together with interest from the date of this contract at six per cent. per annum.

"It is agreed by and between the parties hereto that any and all rents or other income derived from the aforesaid premises by the party of the first part, or his legal representatives while this instrument is in force, are to be first applied as payment on charges against said property—taxes.

"It is further agreed by and between the parties hereto, that all taxes, special or general, assessed against the aforesaid premises, and all other expenses of any kind or nature necessarily incurred for the preservation, improvement of said property during the life of this instrument, and not met by the income therefrom, and paid by said party of the first part, are to be added to the aforesaid purchase price of $5,261, and to bear interest at six per cent. from time of payment of same.

"Said party of the first part hereby expressly reserves the right to grant an easement for sewer purposes to the village of Highland Park, subject to the condition that when said sewer is replaced or disused the easement shall become null and void.

"It is agreed by and between the parties hereto that if the said party of the second part, her heirs, executors or administrators at the expiration of the aforesaid limited time, shall not have taken up this option, said option shall be null and void, and the consideration given as aforesaid shall be forfeited by the said party of the second part, and the said party of the first part shall have the right to retain the same as and for liquidated damages, and the said party of the second part shall and does hereby expressly relinquish to said party of the first part all claim to said land, either in law or equity, and no claim of said party of the second part under this instrument shall be effectual in law or equity; it being expressly understood and agreed that time is the essence of this option.

"It is further agreed that any and all improvements that the said party of the first part deems it necessary to make to protect or advance his interest in said property shall be

W C C charged against said property, ~~and ten per cent.~~
S J W ~~added for time and labor spent in superintending said improvements.~~

"All charges of any kind and nature paid by the party of the first part on behalf of the said property are to be added to the first above mentioned amount of $5,261, and the sum total of said amounts must be paid in good and lawful money of the United States, on or before April 3, 1913.

"On and after the 6th day of May, 1912, all payments as rental derived from said property (stores) are to be paid to the said J. M. Crossman, and said Maria Macdonald or her tenants are to pay $10 per month monthly for the dwelling part of said property.

"In witness whereof, the said parties of the first and second parts have hereunto set their hands and seals the day and year first above written.

   (Signed) "JOHN M. CROSSMAN. [Seal.]
   (Signed) "MARIA MACDONALD.  [Seal.]
"In presence of
 (Signed) "SETH J. WICKER."

"STATE OF MICHIGAN,⎱ ss.
 "County of Wayne, ⎰

"On this 23rd day of April, A. D. 1912, before me, the subscriber, a notary public in and for said county, personally appeared John M. Crossman and Maria Macdonald, to me known to be the persons described in and who executed the foregoing instrument, as vendor and vendee, and acknowledged the same to be their free act and deed.

   (Signed)    "SETH J. WICKER,
  "Notary public, Wayne county, Michigan.
"My commission expires Jan. 25th, 1915."

Maria Macdonald thereupon surrendered all of her rights under the old land contract and continued in possession under this new agreement. It is the claim of plaintiff that defendant Campbell, who is a lawyer, participated in drawing this new agreement between Crossman and Maria Macdonald, and placed his initials on the margin to verify certain pen alterations in the original draft, which initials have been omitted in the printed record, but are reproduced in the copy

of contract set forth in plaintiff's brief, there being testimony upon the subject.

Later, on April 25, 1912, Crossman gave to Campbell a paper as follows:

"Defeasance.

"April 25th, 1912.

"476 Lincoln Ave., Detroit, Mich.

"This contract shall expire on or before five years, while it shall be binding upon my heirs or assigns, administrators and executors.

"Lots one to fifteen, from Hamilton boulevard, west on Glendale avenue, H. R. Blackwood's subdivision outlot of Yeaman's addition to Highland Park, on quarter sections fifteen and twenty-six, 10,000-acre tract were deeded to me by W. C. Campbell. It is only in trust, and when W. C. Campbell shall have paid me the sum I have advanced on them, and also on the twelve family terrace on west side of Riopelle, and south side of Kirby avenue, $13,000 with interest at 6 per cent. per annum from April 25th, 1912, and other expenses it is necessary for me to pay I will then deed the property to him or his assigns. He may pay $500 or more at any time.

"J. M. CROSSMAN.

"Witness:

"MARY CROSSMAN."

The original of this paper Campbell was unable to produce at the hearing below, but he produced a copy which was received in evidence. It is dated 16 days after the deed from Campbell to Crossman was made. This paper was never recorded in the office of the register of deeds. As has been stated, the deed to which it refers was recorded in the office of the register of deeds as a deed, April 27, 1912.

Maria Macdonald had a son, Daniel Macdonald, who was married, and also lived on the property. He was a builder and had done considerable building for plaintiff, which finally resulted in Daniel Macdonald becoming indebted to plaintiff in the sum of $2,531.28. To settle this indebtedness, the rights which Maria

Macdonald had obtained in the lots in question were transferred to the plaintiff, and this transfer was evidenced by the delivery to plaintiff of the Crossman-Macdonald contract dated April 3, 1912, but signed and acknowledged April 23, 1912, and the execution of an agreement between the plaintiff, Maria Macdonald, and Daniel Macdonald, dated November 20, 1912, which was as follows:

"Whereas, Donaldson Craig and Daniel Macdonald have come to an accounting regarding the building by the said Macdonald of ten houses on Sturdevant avenue in the village of Highland Park, and other matters, the result of which accounting is as follows. The debit items against said Craig on said accounting were the following:

Amount due said Macdonald on various houses....$9,446.65
Amount due Macdonald from Craig on commissions.   157.50

Total amount due from Craig to Macdonald......$9,604.15

"The debit items against said Macdonald on said accounting were as follows:

- Payments heretofore made by said Craig to said
  Macdonald ..................................$9,363.63
Unpaid bills owing by Macdonald to various persons, chiefly for materials used by said Macdonald
  in building said houses, which bills the said Craig
  agrees to pay................................. 2,771.80

Total charges against Macdonald...............$12,135.43
Balance due from Macdonald to Craig as the result
  of the accounting............................. 2,531.28

"Now, therefore, in full payment to the said Craig of the said balance of two thousand five hundred and thirty-one 28/100 dollars ($2,531.28) so as aforesaid owing to him by the said Daniel Macdonald, Maria Macdonald hereby sells, assigns, transfers and sets over and conveys to the said Donaldson Craig all of her interests and rights existing by virtue of an instrument dated April 3, 1912, wherein John M. Crossman, of Detroit, Michigan, is party of the first part,

and the said Maria Macdonald, of Highland Park, Michigan, is party of the second part. And the said Maria Macdonald hereby also conveys to the said Donaldson Craig all her interests in the land described in the said instrument existing by virtue thereof. The said Daniel Macdonald and Donaldson Craig hereby agree to the accounting hereinbefore recited.

"In witness whereof the said Donaldson Craig and Daniel Macdonald, and Maria Macdonald have hereunto set their hands and seals this 20th day of November, 1912.

"MARIA MACDONALD.    [Seal.]
"D. MACDONALD.    [Seal.]
"DONALDSON CRAIG.    [Seal.]"

Before plaintiff made the foregoing agreement he took the precaution to do the following things:

He had the abstract of the lots extended and certified to date, and examined by his attorney. He obtained, through his attorney, a statement in writing from Crossman signed by him, as to the amount then owing by Maria Macdonald on the lots. He told Crossman he was about to acquire the interest of Maria Macdonald in the lots, and discussed the question of insurance on the buildings. At no time prior to the making and delivery of the agreement between plaintiff and the Macdonalds did either Crossman or Campbell tell plaintiff, either directly or indirectly, that Campbell had any interest in the lots.

When plaintiff procured the interest of Maria Macdonald in the lots there were two fire insurance policies on the buildings in the sum of $1,600 each, which were renewals of policies which Ross had transferred into Crossman's name at the time the lots were deeded to the latter. It is claimed that Crossman told Craig some time later that the property was worth more than $3,200, and accordingly plaintiff took out in his own name another policy in the American Insurance Co. of Newark, N. J., in the sum of $1,000,

with the loss payable first to Crossman, and next to himself.

On January 18, 1913, plaintiff left for the West Indies and did not return to Detroit until the next March. Soon after the plaintiff left Campbell sent to plaintiff's office a letter as follows:

"Insurance, Loans.                    Exchanges, Contracts.
          "Phone Main 4256.
          "CAMPBELL, PETERS & GREIG.
          "Real Estate, 74 Home Bank Building.
                    "Detroit, Mich., Jan. 20, 1913.
"Craig Real Estate Exchange,
     "Mr. Generoux.
"*My dear Sir:*
     "Mr. J. M. Crossman notified me, a few days ago that he had a conversation with some member of your office, presumably yourself, in regard to a certain option given Mrs. Maria Macdonald, during April, 1913. In fairness to you, I desire to notify you that said option was not assignable, and such assignment would not be honored by the owners. Mr. Crossman, as you are aware, is a mortgagee only, the title being held elsewhere. Trusting that you are not suffering in this deal as I have been, I remain
                    "Yours truly,
                         "W. C. CAMPBELL.
     "P. S. A notice of default was served on Mrs. Macdonald December 26th, 1912.
                    "Yours, etc.,
                         "W. C. C."

This letter was handed to Mr. Hatch, plaintiff's attorney, who saw Crossman, it is claimed, on January 21, 1913, and asked him about Campbell's claims. He replied that the conveyance to him on April 9, 1912, was an absolute conveyance, without any understanding, oral or otherwise, to the contrary; but that subsequently he had a talk with Campbell, and gave the latter a paper to the effect that, if the property was sold within five years, Campbell could have the surplus after he (Crossman) was repaid all he had in-

vested in the property. While plaintiff was gone, and while Maria Macdonald was still living in the building on the lots, as claimed by plaintiff, a fire occurred about January 29, 1913, which badly damaged the buildings, and made them untenantable. While plaintiff was absent Mr. Hatch represented him in legal matters, and he took appropriate steps to notify the insurance companies of the loss, as soon as he learned of the fire.

Upon plaintiff's return, a letter addressed to Crossman was prepared by Mr. Hatch, and signed by plaintiff, and delivered to Crossman, in which letter plaintiff gave notice that he proposed to tender to Crossman the proper amount, and obtain a deed of the lots, pursuant to the contract of April 3, 1912, with Maria Macdonald. This letter was dated March 26, 1913, and went into, with much detail, the amount to be tendered, basing the computation on the statement submitted by Crossman to plaintiff the previous November. It also submitted the form of deed to be made, and requested an assignment to plaintiff of three insurance policies, and also requested an interview for the purpose of making the tender prior to April 3, 1913, when the time for executing the option to purchase expired.

As a result of this letter and subsequent discussions, a final interview was had between the plaintiff, Crossman, Campbell and Hatch on April 3, 1913, which resulted in a tender by Hatch on behalf of the plaintiff to Crossman of the sum of $5,726.08 and the demand of a deed and assignment of the three insurance policies. The tender was refused. The reasons for the refusal were that Crossman did not think enough money was tendered, and that he would not, under any circumstances, transfer the two oldest insurance policies, but would transfer the policy taken out by the plaintiff. At the same time Crossman stated that

he did not think he had the right to deed the property against the protests of Campbell, and did not intend to recognize any right at all in plaintiff to demand a deed.

Crossman, however, submitted a statement of the amount which he claimed was due under the Macdonald contract totaling $6,036. Wherein this statement differed from the plaintiff's computation is pointed out in the briefs and record, but is too lengthy to warrant insertion here. It consisted of numerous small sums. After this tender was made and refused, the bill of complaint herein was filed on April 5, 1913.

Pending the hearing Maria Macdonald died, and Daniel Macdonald could not be found at the time of the hearing.

Before the hearing an adjustment of the loss upon the two oldest insurance policies was had, and Crossman received $1,744 therefrom. Suit was brought on the policy issued by the American Insurance Co. to the plaintiff, which was pending when the instant case was heard below, but recovery has since been had, and affirmed by this court on writ of error. See *Crossman* v. *Insurance Co.*, 198 Mich. 304 (L. R. A. 1918A, 390).

Some other claimed facts, which were either controverted by opposing testimony, or alone supported by testimony claimed to be incompetent, should perhaps be stated.

It was claimed by defendants that at the time the contract of April 3, 1912, was made between Crossman and Maria Macdonald, there was an oral agreement by Maria Macdonald to pay $50 a month rent, in addition to the $10 rent specified in the agreement. This testimony was objected to by plaintiff, because it was equally within the knowledge of Maria Macdonald, who was the assignor of plaintiff, and was deceased, and thereby incompetent, under the statute;

and also because it tended to vary the provisions of the written contract, which covered the question of rent. It was claimed by plaintiff that soon after he acquired the interest of Maria Macdonald in the lots, he inquired of Crossman regarding the insurance, to see whether he was amply protected, and was told by Crossman regarding the policies on the building, and that they would inure to his benefit and protection. This claim was supported by the testimony of the plaintiff and that of another witness. Crossman testified that there was talk about the insurance, and that he told plaintiff about the policies he had, and that the property would stand more. While Crossman does not directly deny the testimony of plaintiff, as to the existing policies inuring to the plaintiff's benefit, his testimony may be subject to that construction. It was claimed by defendants that for nonpayment of rent they terminated Maria Macdonald's rights in the property under the contract, by the service upon her of some sort of notice on December 26, 1912. A copy of the notice does not appear in the record, and the substance of it is not given. This testimony was objected to, because equally within the knowledge of Maria Macdonald, plaintiff's assignor, who was deceased. It was also claimed by defendants that a partnership composed of defendant Campbell, one Peters, and one Greig was occupying the building on the lots as a real estate office, at the same time that the Macdonalds were living in the building, at the end of November, 1912, when plaintiff purchased from Maria Macdonald. This claim was supported by the testimony of Campbell, who claimed that it was occupied from the middle of September, 1912, to the middle of January, 1913. But Greig, one of the firm, testified that the building was used only as a branch office from the latter part of August for two or three months, and that they left before it got

very cold. This occupancy seems to have been a fugitive, uncertain one.

It was also claimed by defendants that some time after plaintiff claimed to have the lots for sale, a Mr. Generoux (who at the time was working as a real estate salesman on commission for plaintiff) saw Campbell on the premises and was informed by the latter that he (Campbell) owned the lots; and that later Generoux told plaintiff what Campbell had said. This appears to have been after the plaintiff had listed the property, and there is no claim that he had anything to do with the property until the assignment of the contract on November 20, 1912. We fail to see the importance of this evidence as to what occurred after plaintiff's rights had become fixed, if he had any.

It was claimed by plaintiff that on April 1, 1913, Maria Macdonald signed a paper addressed to Crossman, requesting the latter to deed the lots to plaintiff, and also to assign the insurance policies to him. This paper was prepared by Mr. Hatch, who gave it to Daniel Macdonald to be signed. The authenticity of the signature of Maria Macdonald to the paper is denied by defendant Campbell on the ground that the handwriting is not that of Mrs. Macdonald, and because there is the prefix "Mrs." before the name. The authenticity of the signature is affirmed by Mr. Hatch because of another paper signed by Maria Macdonald on April 23, 1913. The disputed paper was produced at the argument for our inspection. While agreeing with the learned circuit judge that this paper is of no great importance, yet we see no reason to doubt that Mrs. Macdonald signed it. Plaintiff claimed at the hearing that this paper was presented at the time of the tender. Mr. Hatch so testified. The defendants testified that they never saw the paper until the hearing.

On the argument in the court below, the following claims were made by the respective parties:

(1) The plaintiff claimed that Maria Macdonald possessed at the time she made the contract with plaintiff, November 20, 1912, a valid property right to have conveyed to her, or to any one whom she would nominate, the lots in question, at any time on or before April 3, 1913, upon payment of the sum named in the contract of April 3, 1912, with interest at 6 per cent. and such additional sums as the contract provided for future taxes, assessments, charges or rents, with interest.

(2) That the deed from Campbell to Crossman is not a mortgage; and the latter so-called defeasance is not a defeasance, but simply an agreement to reconvey, which was never recorded.

(3) That Campbell was estopped, by his conduct in participating in the drawing and making of the contract in question, from denying the validity of the contract, or any right on his part superior thereto, which might prevent the fulfillment of the contract.

(4) That the rights of Maria Macdonald, under the contract, were transferred to plaintiff, for a valuable consideration.

(5) That plaintiff became a *bona fide* holder of the rights of Maria Macdonald, without knowledge, direct or constructive, of any rights of Campbell, even if the latter's rights were superior to those of Maria Macdonald; and that Campbell by his conduct is estopped to set up his prior rights against those of plaintiff.

(6) That the rights of Maria Macdonald, and those of plaintiff were never terminated in any valid manner.

(7) That a direct request signed by Maria Macdonald, that the lots be deeded to plaintiff, was presented to Crossman; but even if this were not so, the contract between Maria Macdonald and plaintiff, amounted, legally, to such request, and to the nomination by Maria Macdonald, of plaintiff, as the person to receive the deed of the property.

(8) That a tender of the proper amount, within the proper time, was made to Crossman in behalf of

plaintiff. (The language of the contract was "on or before April 3, 1913.")

(9) That plaintiff was entitled, under the terms of the contract upon payment of the full purchase price, to have assigned to him all of the insurance policies.

(10) That Crossman was estopped by his conduct in notifying plaintiff that he had charged Maria Macdonald with the premiums on the two oldest policies, and in stating that such policies inured to plaintiff's benefit, to take the opposite position, after plaintiff had effected only $1,000 additional insurance, and a fire loss had occurred.

The defendants made the following claims:

(1) That the deed from Campbell to Crossman was only a mortgage.

(2) That the contract of April 3, 1912, between Crossman and Maria Macdonald was invalid, so far as Campbell was concerned, because Crossman could not convey without Campbell's consent, which was withheld; and Maria Macdonald had notice of the situation.

(3) That the contract of April 3, 1912, between Crossman and Maria Macdonald was not assignable by the latter.

(4) That there was no consideration for the assignment by Maria Macdonald to plaintiff of the contract.

(5) That no nomination was ever made by Maria Macdonald of plaintiff as the person to whom conveyance was to be made.

(6) That plaintiff had notice of the rights of Campbell in the lots before he contracted with Maria Macdonald.

(7) All rights of Maria Macdonald, if she had any, in the property, were terminated by the notice served upon her on December 26, 1912.

(8) That no sufficient amount was tendered by plaintiff; and that additional rent of $280 was due under an oral agreement to pay $50 per month, additional rent by Maria Macdonald.

(9) That the two oldest insurance policies were the individual property of Crossman, and not affected

or covered by the contract of April 3, 1912, between Maria Macdonald and himself.

The learned circuit judge found from the evidence that the rights and equities of the plaintiff were superior to those of defendant Campbell, or those of defendant Crossman. He filed a lengthy written opinion, which appears in the record and to which attention is called. He found that there was a good consideration for the transfer of the contract of April 3, 1912, from Maria Macdonald to plaintiff, and that this transfer was in effect the designation of plaintiff to receive the deed, irrespective of the disputed question of fact regarding the formal designation of plaintiff. He also found for the plaintiff, as to his right to have the insurance money; and against defendant Crossman as to his claim of an oral agreement by Maria Macdonald to pay $50 a month more rent; against defendant Campbell as to his claim of right being superior to plaintiff; and against both defendants as to their claim of the termination of the contract by notice. A decree was entered requiring defendant Crossman to execute and deliver a deed to plaintiff upon payment of the proper sum, including any money paid for taxes or repairs, or expenses in the insurance litigation, with the power reserved in the circuit court to make future directions, in case the parties could not agree as to the amount paid for such taxes, repairs or expenses. The decree is too lengthy to be here set forth in full. We quote portions of it as follows:

"It * * * does hereby consider, order, adjudge and decree that the plaintiff Donaldson Craig is legally and equitably entitled to have conveyed to him by the defendant John M. Crossman free and clear from all liens, interests or titles of the defendant William C. Campbell the land hereinafter described, and to have assigned to him all the right, title and interest of the defendant John M. Crossman in and to a certain cause of action now the subject of litigation

in the circuit court for the county of Wayne.   *   *   *
in a suit entitled John M. Crossman, plaintiff, *v.* American Insurance Company of Newark, New Jersey, etc.

"The plaintiff is to be credited and the defendants are to be debited with the following sums:   *   *   *
Proceeds realized by the defendant John M. Crossman, from the two policies of insurance on the buildings on the property, issued by the St. Paul Fire & Marine Insurance Company, and the London Assurance Corporation $1,744, less the costs of arbitration incidental to the collection thereof."

From this decree the defendants have appealed. In this court their counsel has argued with great persistence that upon this record the plaintiff has no claim upon this property superior to the rights of the defendants, and that their respective equities should be preserved to them; that, in fact, plaintiff has no interest whatever in the property; that neither defendant has ever recognized him as having any interest therein; that the evidence shows that Maria Macdonald had no interest in the same that had not been cut off by a forfeiture; that plaintiff paid Maria Macdonald no consideration for the claimed assignment; that the payment of a worthless debt of an impecunious son was no consideration; that plaintiff's actions, viewed from every point, were characterized by overreaching craft and fraud, and that the decree should be reversed and the bill dismissed.

We have read this lengthy and somewhat confusing record with great care, and because of the persistency of defendants' counsel, have endeavored to follow and understand his arguments. We are unable to agree with his conclusions. In our opinion the trial court reached the correct conclusion under the evidence in holding that the rights and equities of the plaintiff are superior to those of either defendant, and that plaintiff is entitled to specific performance of the contract of April 3, 1912. That contract created a valid

property right in Maria Macdonald. The question of consideration as between Maria Macdonald and the plaintiff cannot be raised by defendants. She might have given the contract to the plaintiff. Neither her heirs nor her creditors are here complaining. *Reed v. Bond*, 96 Mich. 134.

The character of the so-called defeasance is not important. It was never recorded and plaintiff had no notice of it.

Defendant Campbell is a lawyer, and was present and participated in the drawing of the contract of April 3, 1912. He initialed a change in the contract. He should be held to be estopped to deny, as against Maria Macdonald and those succeeding to her rights, that his deed to Crossman was an absolute deed. *Ueck v. Meatz*, 192 Mich. 439, and cases cited.

The legal title was in Crossman when the contract of date April 3, 1912, was signed and acknowledged on April 23, 1912. It has been held in many cases that if the owner of land knowingly stands by and permits his property to be mortgaged or sold by another, to one who is to the owner's knowledge relying on the apparent ownership of the person executing the conveyance, such conduct will estop the owner from asserting his title against the mortgagee or grantee. 10 R. C. L. pp. 780, 781, and cases cited.

We have no doubt that the contract was assignable. A lease with option to purchase is, by nature, assignable. *Gustin v. School District*, 94 Mich. 502; 5 Corpus Juris, pp. 1311, 1312, and cases cited.

It is urged by defendants' counsel that the rights of Maria Macdonald, and those of the plaintiff, under her (if he had any), were terminated by some sort of a notice served upon her by defendant Campbell on December 26, 1912. The contents of this notice do not appear in the record. There was no competent testimony that any such notice was ever served. The

only testimony was from the defendants, and it was objected to because plaintiff is the assignee of Maria Macdonald, who is deceased.    Judicature act, chap. 17, § 65 (3 Comp. Laws 1915, § 12553); *Shepard* v. *Shepard*, 164 Mich. 183, 196; *Ripley* v. *Seligman*, 88 Mich. 177.

Defendants' counsel urge that this rule should apply to the plaintiff.    We think not.    As to him, Maria Macdonald was not an "opposite party."    He stood in her shoes.    We are of the opinion that the plaintiff was entitled, under the terms of the contract, upon payment of the full purchase price, to the benefit of the insurance; the premiums had been charged to Maria Macdonald in Crossman's statement, and he is in no position to dispute such claim of the plaintiff. The decree below, which gives the insurance* money to the plaintiff is, we think, correct.

We have examined the other questions presented, and think they were properly disposed of by the court below, and shall not discuss them.

The decree of the circuit court is affirmed, with costs to the plaintiff.

MOORE, C. J., and STEERE, BIRD, and SHARPE, JJ., concurred with STONE, J.   FELLOWS, J., concurred in the result.    BROOKE, J., did not sit.

Justice KUHN took no part in this decision.