SPITZLEY *v.* HOLMES.

1. MORTGAGES—DEED AS MORTGAGE—VENDOR AND PURCHASER.
   When deed given as security for indebtedness is accompanied by contract to repurchase, transaction is regarded as mortgage.

2. ESTOPPEL—TITLE TO LAND—FRAUDS, STATUTE OF.
   Although title to real estate may not be created by estoppel, party may estop himself, after arrangements have been fully executed, from asserting that title he by his own acts has created or aided in creating is not true title.

3. SAME—MORTGAGES—USURY.
   Where owners gave deed and took back fictitious land contract, so that, when contract was discounted, they obtained more than could have been had through second mortgage, they are estopped from claiming that land contract constitutes second mortgage tainted with usury.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted October 22, 1931. (Docket No. 183, Calendar No. 36,006.) Decided January 4, 1932.

Bill by Jane R. Spitzley against Harold W. Holmes and another to foreclose a land contract. Cross-bill by defendants against plaintiff to declare the transaction a mortgage and reduce the principal sum due. Decree for plaintiff. Cross-bill dismissed. Defendants appeal. Affirmed.

*John H. Yoe* (*Lewis Brooke,* of counsel), for plaintiff.

*Longley, Bogle & Middleton,* for defendants.

BUTZEL, J. Harold W. Holmes, defendant, owned a valuable house and lot occupied by himself and wife as a home, in Balmoral drive, Palmer Woods, Detroit, Michigan. The exact interest of Mrs. Holmes in the property is not shown, but she signed the documents hereinafter referred to, and makes no separate defense or claim. The property was incumbered with a mortgage of $22,710.78. There were unpaid taxes against it amounting to over $1,100. Being in very great need of money, Holmes first sought the assistance of Geist & Company, brokers, and then of others, for the purpose of raising a larger amount on the property. Finding that only $7,500 could be raised by a second mortgage, an amount insufficient for his needs, he returned to Geist & Company, who advised him that it would be difficult to raise the amount he needed by means of a second mortgage. A plan was devised by which a larger first mortgage would be placed upon the property, so that there would be a surplus after paying off all the liens then outstanding. After this was done, as Holmes testified, it was agreed that a land contract would be created by deeding the property to a third party, who in turn would sell it back on land contract to defendant, and that this contract would be sold at a discount to some investor. Holmes testified that he was not concerned whether he had to pay a commission or a discount for this service.

Holmes knew that Geist & Company were not to do the refinancing from their own funds, but were to secure the moneys from others, and that, before defendants could receive the entire amount needed from the transaction, it would be necessary to discount the land contract with a third party.

Defendants accordingly first executed a new mortgage for $25,000 to a trust company, and thus re-

alized a small amount from the surplus after the payment of the former mortgage, taxes, Geist & Company's commission, etc. Immediately thereafter, defendants deeded the property to one James E. Meredith, an employee of Geist & Company, who at once conveyed it to Ida Bruns, cashier and employee of Geist & Company. She, thereupon, as vendor, entered into a land contract with defendants as vendees, who agreed to purchase the property for $68,500. The contract recited a down payment of $30,000, but this is pure fiction, as nothing whatsoever was paid. The contract further provided for the additional payment of $38,500, with interest, in installments of $500, payable monthly, until the amount of the principal was reduced to $25,000, whereupon vendees would be entitled to a deed subject to the $25,000 mortgage which they were to assume.

Dr. William A. Spitzley had previously purchased contracts from Geist & Company, and had full faith in them. In furtherance of the arrangements made with and on behalf of defendants, Geist & Company negotiated with Dr. Spitzley for the sale of the land contract. He bought it for Jane Spitzley, his wife, plaintiff herein, at a discount of $2,400. Geist & Company deducted an additional $1,600 from the purchase price for their commission. In a statement given to defendants, $4,000 (the sum of these two amounts) was charged as discount on the sale of the land contract. Dr. Spitzley showed that he had sole charge of the transaction: (1) That he did not know Ida Bruns; or (2) that she was in the employ of Geist & Company; or (3) that Meredith had figured in the transaction; (4) that he acted in good faith, and depended upon the security and Holmes' financial standing. He did not know that he was

assisting in the refinancing of defendants by Geist & Company, upon whose word he relied in believing that he was investing in a good contract. He thought he was purchasing an existing land contract that had been regularly entered into for the sale of the property by Ida Bruns to defendants.

Defendants made no objection to the charges or the transaction for four months, during which they made regular monthly payments. Thereafter, upon default being made, plaintiff filed a bill to foreclose. Defendants in their answer and cross-bill ask that the land contract be decreed to be a second mortgage, tainted with usury, and that the amount found to be owing be reduced to $9,420, to correspond with the sum that they actually received from the proceeds of the loan after Geist & Company deducted the discount allowed plaintiff, their own commission, and the small sum paid out for tornado insurance. From the decree granting plaintiff's prayer for foreclosure and dismissing the cross-bill of defendants, the latter appeal.

The statements of counsel in their briefs present a large number of questions involved. We need only discuss the question of estoppel, for it is decisive. When a deed given as security for an indebtedness is accompanied by a contract to repurchase, from the grantee to the grantor, the transaction is regarded as a mortgage. *Clark* v. *Landon,* 90 Mich. 83, 89; *Skupinski* v. *Provident Mortgage Co.,* 244 Mich. 309, 315. However, if the owners intentionally and purposely give a deed and take back a land contract fictitious in its inception in order to hold it out and represent it to be a land contract regularly entered into, so that, when sold at a discount, they can obtain a larger sum than could have been had through a second mortgage, they will, after receiving all the

benefits from such a transaction, be estopped from claiming that the land contract constituted a second mortgage.

Defendants sought the assistance of Geist & Company and constituted it their agent. They created a land contract by giving an absolute deed, and then taking back a land contract that recited a fictitious payment and was executed for the sole purpose of selling it as a land contract to the public. They knew it would not be sold as a second mortgage for the amount they required. The record contains no evidence whatsoever that either plaintiff or her husband knew that the deed and contract were merely taken as security. Geist & Company were acting as agents for defendants; they did not do anything that they were not authorized to do. Defendants are now estopped from complaining. Claiming that the legal effect of the transaction is a second mortgage, defendants assert that its nature cannot be changed, for title to real estate cannot be created by estoppel. We have repeatedly held in many cases, some not presenting as strong equities against the defendants as the instant one, that misleading conduct on the part of an owner will estop him from asserting a different title than the instruments purport to convey. *Craig* v. *Crossman,* 209 Mich. 462, 480; *Stevens* v. *Wakeman,* 213 Mich. 559. In *Stevens* v. *DeBar,* 229 Mich. 251, the rule is stated as follows:

"This court has consistently held that title to real estate may not be created by estoppel, but in numerous cases this court has also held that a party may estop himself after the arrangements have been fully executed from asserting that the title he by his own acts has created or aided in creating is not the true title."

See, also, *Johnson* v. *Becker*, 251 Mich. 132; *Colonial Theatrical Enterprises* v. *Sage*, 255 Mich. 160, 171.

The defendants by their own showing are estopped from receiving the equitable relief they ask for.

The decree in favor of plaintiff is affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.