REES *v.* COLLINS.

1. Evidence—Admissions—Wills—Life Interest—Executors and Administrators.

Where husband willed to wife his entire estate for her lifetime and then to his children, but will was never probated, on issue, after her death, as to whether certain securities left by her belonged to husband's estate, her admissions, made during her lifetime, were admissible.

2. Wills—Duty to Probate—Statutes.

Widow, continuing to use husband's safety deposit box, in which was his will, had duty to deliver it to probate judge (3 Comp. Laws 1929, §§ 15531, 15532).

3. Executors and Administrators—Replevin—Ownership of Securities—Prima Facie Case.

Where, in replevin by administrator of husband's estate against executor of wife's estate for certain securities, evidence was sufficient to make out *prima facie* case of ownership in husband's estate, and no evidence was submitted by defendant, judgment for plaintiff was justified.

Appeal from Bay; Houghton (Samuel G.), J. Submitted April 5, 1932. (Docket No. 5, Calendar No. 36,289.) Decided June 6, 1932.

Replevin by Burton D. Rees, administrator of the estate of Thomas J. Rees, deceased, against William A. Collins, executor of the estate of Alice A. Rees, deceased, for certain bonds. Judgment for plaintiff. Defendant appeals. Affirmed.

*A. H. McMillan,* for plaintiff.

*Collins & Thompson,* for defendant.

Sharpe, J. On March 24, 1916, Thomas J. Rees executed a last will and testament, in which he devised and bequeathed his entire estate to his wife, Alice A. Rees, "for her own use and sole benefit during her life," and, after her decease, to pass to his two children, Burton D. Rees and Beatrice M. Hart, share and share alike. His wife was appointed executrix thereof. He died in 1917. She executed a will on July 27, 1929, leaving substantially all of her estate to William H. Keyser and his wife, Elizabeth Keyser, with whom she was living, but who were not related to her in any way. She passed away on August 11, 1929. Her husband's will was kept by her in a safety deposit box in the Peoples Commercial & Savings Bank in Bay City, west side, until shortly before her death, when it was delivered to the judge of probate. Both wills were afterwards admitted to probate. The plaintiff is administrator of his estate with the will annexed, and the defendant is executor of hers.

This action is replevin, brought by plaintiff to recover certain bonds and certificates of stock in defendant's possession as executor, which plaintiff claims belong to the estate of the husband. Plaintiff had judgment on trial without a jury. Defendant has appealed.

Thomas J. Rees for many years was chief engineer on a steamer on the Great Lakes, and at the time of his death was receiving a salary of $220 per month. It also appears that he at one time received $542 from his deceased father's estate. He and his wife were economical and lived frugally.

Charles H. Cook, the cashier of the Peoples Commercial & Savings Bank of Bay City, west side, was sworn as a witness for the plaintiff. He produced the bank record of the account of Mr. Rees from 1912 to the date of his death, and of Mrs. Rees,

continued without any formal transfer to her, thereafter. On being shown the will of Mr. Rees, he recalled that she at one time had showed it to him. He testified:

"On one occasion Mrs. Rees was indicating a desire to retrench on expenditures and I told her I thought the money was intended for her use entirely. She says, 'No, that is not true, Mr. Cook.' She says, 'Mr. Rees left those funds with me in trust for the children and I am to treat them with the utmost economy and conserve them for the children.' * * *

"We have a record at the bank of the bonds purchased by Mr. Rees. Our records would indicate when the purchases were made and when the account was charged. I could state very positive that the purchase of all bonds, during the lifetime of Mrs. Rees, followed the collection of bonds which had matured that were already in her possession. Out of this account of Mr. Rees and out of the proceeds of the bonds which Mr. Rees left and which were collected, were purchased other bonds. I could not state what estate in bonds and securities Mr. Rees left. I assumed that these bonds were purchased out of the proceeds of the sale of bonds that Mr. Rees had left, but I don't know that positively. I could positively identify the bonds that have been offered this afternoon as having been bought through the Peoples Commercial & Savings Bank, and the purchase price was received from the proceeds of the bonds which had been turned in by Mrs. Rees. I could not state that they were the property of Mr. Rees. I could not state whether they were property which was in the safety deposit box at the time of Mr. Rees's death. Examining the account of Thomas J. Rees, the aggregate of the bond items that I can identify is $4,500, from 1912 to the day of his death. And I believe because of the amounts that they were bond transactions."

Winifred Rees, the wife of Burton D. Rees, testified that Alice A. Rees at one time said to her, when talking about his illness and death, that "after she paid all expenses she had $9,000 left;" and that it was in the form of bonds.

Mrs. Helen Rees, the wife of a brother of Thomas J. Rees, testified that she visited Alice A. Rees in September, 1924, and that Alice then said to her that "Mr. Rees had left the investments for her during her lifetime, and then to go to the children, Burton and Beatrice;" that—

"I could not say that she made any statements as to how much he had left. She said that she had used it for her expenses and that she wanted to save until it became $10,000 out of the income."

William C. Gustin testified that he frequently visited Alice after her husband's death, and that she discussed the property left to her.

"I can't exactly speak her words although I can give her meaning, that Mr. Rees had left enough money so that she was enabled to live on the interest, and that she felt as if this money was left in trust to her for the children when she was through with it. She did not state how much he had left."

Elma Rohrer, an old friend of the family, testified that Alice often spoke to her with reference to the property left her by her husband.

"She said she would have had about $11,000 or $12,000, only his sickness and death left her with about $9,000. She said she was holding this in bonds. *  *.  * Well, she said these bonds were left to her for her keep during her life, and after that it was to go to the children."

No evidence was submitted by the defendant. Counsel for the defendant insist that—

"A rebuttable presumption of ownership, which in the absence of evidence to the contrary, the law will assume to be correct, arises from the possession of real or personal property.   *   *   *

"In this case the only evidence to overcome this presumption offered on behalf of the plaintiff consists of claimed admissions made by the deceased, Alice A. Rees, during her lifetime;"—

that such testimony "should be scrutinized carefully," and that, if admissible at all, it was "not sufficient to prove ownership of the property involved in the estate of Thomas J. Rees."

In our opinion, this evidence was admissible. Counsel correctly state the rules of law applicable to such admissions, and, if decision were to rest entirely upon the proof of statements made to interested witnesses, we should hesitate before deciding the plaintiff had established title in the estate of the husband to the securities in question. But there are other facts which tend strongly to support his claim in this respect. Mr. Cook testified that the bank books disclosed that Thomas J. Rees had, during his lifetime, purchased bonds aggregating $4,500 in amount. It will be assumed that these were in the safety deposit box when he passed away. His wife continued to use this box. In it was the will of her husband. It was her duty to have delivered it to the judge of probate. 3 Comp. Laws 1929, §§ 15531, 15532. Had she done so, the estate would then have been probated and an account taken of the securities owned by him which passed to her under his will. Her neglect to do so may be attributable to a want of knowledge of the law on her part, and also to the fact that, understanding the terms of his will, she thought it unnecessary to do so, as all of his property would pass to his children on her death. Her statement to Mr. Cook,

a disinterested witness, above quoted, tends strongly to support this conclusion, as does also the fact that she made no will until about two weeks before her death and while being taken care of by the parties, unrelated to her, to whom she bequeathed substantially all of her property.

We think that, under the proofs submitted by plaintiff, a *prima facie* case of ownership of the securities in dispute in the estate of Thomas J. Rees was made out. No evidence was submitted by the defendant. If these securities belonged to Alice A. Rees at the time of her death, it would seem that some proof should have been available tending to establish such ownership.

The judgment is affirmed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.