SNIDER *v.* SCHAFFER.

1. SPECIFIC PERFORMANCE—REMEDY OF GRACE.
   Specific performance of either oral or written contracts is a remedy of grace and not of right; it rests in the sound discretion of the court to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case.

2. SAME—EVIDENCE—ORAL CONTRACTS.

In suit for specific performance, proof of existence but not contents of the contract *held*, insufficient to comply with rule that greater certainty is required in such a proceeding than in an action at law and that the terms of the contract sought to be enforced must be clear and unambiguous, especially where enforcement of an oral contract is sought.

3. ESTOPPEL—PLEADING—SPECIFIC PERFORMANCE.

Estoppel is a defense which must be pleaded in a suit for specific performance of a contract (Court Rule No. 23, § 3 [1933]).

4. SPECIFIC PERFORMANCE—ESTOPPEL—PLEADING.

In suit for specific performance of a contract to convey land, estoppel *held*, sufficiently pleaded where defendant pointed out that plaintiff and his wife stated in an affidavit that they never had title to the property in question, that to the best of their knowledge it was in one of the defendants and they were only occupying the premises by permission.

5. ESTOPPEL—EVIDENCE—AFFIDAVIT—FRAUD.

In suit for specific performance of contract to convey land, evidence that affidavit by which plaintiff estopped himself from asserting title claimed by him to have been obtained by fraud, *held*, sufficient to show plaintiff knew its purpose.

6. SAME—TITLE.

Although title to real estate may not be created by estoppel, a party may estop himself after arrangements have been fully executed from asserting that the title, he by his own acts has created or aided in creating, is not the true title.

7. EQUITY—SPECIFIC PERFORMANCE—LAND CONTRACT.

Plaintiff in suit for specific performance of a land contract is appealing to the conscience of the court, and, if his conduct is inequitable, he should be denied relief, for court of equity looks at the whole situation and grants or withholds relief as good conscience dictates.

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Ruling of trial court that was favorable to appellant as to admission of testimony of plaintiff's wife called for cross-examination under the statute and objected to as equally within knowledge of deceased vendor whose estate was an opposite party may not be questioned by appellant (3 Comp. Laws 1929, §§ 14219, 14220).

9. EVIDENCE — SPECIFIC PERFORMANCE — ESTOPPEL — ADMISSIONS
AGAINST INTEREST.
    In suit for specific performance of a land contract evidence that
        plaintiff had denied ownership *held*, admissible under estoppel
        as pleaded.

10. SAME—ADMISSIONS AGAINST INTEREST.
    A party's admissions against interest may be explained and are
        not conclusive and do not estop him from showing the con-
        trary.

11. APPEAL AND ERROR—SPECIFIC PERFORMANCE—HEARING DE NOVO.
    Appeal in suit for specific performance is a hearing *de novo*
        upon which Supreme Court, though mindful of advantage pos-
        sessed by trial court before whom witnesses appear in person,
        does weigh the evidence.

12. SPECIFIC PERFORMANCE—PLEADING—EVIDENCE—ESTOPPEL.
    Bill in suit for specific performance of land contract must be
        dismissed where proofs fail to sustain allegations therein or
        plaintiff, by his conduct, is estopped to maintain his claims.

13. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—RECORD.
    In suit by purchaser for specific performance of land contract,
        commenced after oil wells brought in substantial royalties,
        record *held*, to require denial of equitable relief to plaintiff.

Appeal from Isabella; Hart (Ray), J. Submitted
April 9, 1936. (Docket No. 38, Calendar No. 38,526.)
Decided June 11, 1936.

Bill by James E. Snider against Julius Schaffer,
Jr., and Fred Schug, executors of the last will and
testament of Julius Schug, deceased, Caroline
Schug, Caroline Snider, Lena Schaffer, Rose House,
Albert Schug and Fred Schug, for specific perform-
ance of a contract, for an accounting and other
relief. Default of Caroline Snider entered. Sug-
gestion of death of Caroline Snider. Substitution of
Rolland L. Snider, individually and as administra-
tor of estate of Caroline Snider, deceased, and Earl
Snider and Erma Hutson, individually and as

guardian of Verna Mae Snider, as parties defend-
ant. Case reopened for further testimony. Bill
dismissed as to defendants Schaffer, Schaffer, Jr.,
Schug, House and estate of Schug. Plaintiff ap-
peals. Affirmed.

*C. A. Reading* and *O'Keefe & O'Keefe,* for plain-
tiff.

*Leibrand & Leibrand,* for defendants Julius
Schaffer, Jr., and Fred Schug, executors, and Caro-
line Schug.

BUSHNELL, J. Julius Schug, now deceased, and
Caroline, his wife, were at one time the owners of
the 80-acre farm in question in Isabella county;
their daughter Caroline, defendant herein, married
plaintiff James E. Snider by whom she had four
children, Rolland, Erma, Earl and Verna Mae, who
were later joined as defendants in this action. Mrs.
Snider died intestate during the pendency of the
cause below, her son Rolland being appointed ad-
ministrator of her estate. The remaining defend-
ants Lena Schaffer, Rose House, Albert and Fred
Schug were the sisters and brothers of Mrs. Snider,
who with the widow Caroline are the sole heirs at
law of Julius Schug. Julius Schaffer, Jr., and Fred
Schug are executors of Mr. Schug's last will and
testament.

Plaintiff claims that he and his wife purchased
the 80 acres from Mr. and Mrs. Schug on a land
contract, dated August 15, 1908, for $3,500 payable
at the rate of $100 per annum with interest at six
per cent. on unpaid balances. Although he claims
interest has been paid, little was paid to the Schugs
on principal, but they, on the other hand, never

served a notice of forfeiture of the land contract on the Sniders or took any steps to recover possession of the farm.

In 1927, Snider and wife executed and delivered an oil lease on the land to Clyde Fisher and Charles Wagner which lease was assigned to the Pure Oil Company. Some time in 1929 the Sniders were approached by Isaiah Leebove who also desired an oil and gas lease on the premises; he examined the 1927 lease and expressed the opinion that it was invalid. It is further claimed that Leebove met the Sniders at the Schug home where the situation was discussed; subsequently a new lease was executed by the Schugs to the Mammoth Oil Company and witnessed by plaintiff. It is further claimed that in the presence of all the parties and without objection by any of them, the 1908 land contracts were burned by Leebove. Under the Mammoth lease, the Schugs were to receive a royalty of one-eighth of the net proceeds of the gas and oil produced; drilling was to commence on or before 90 days and the Schugs warranted and agreed to defend their title to the land. This lease was dated March 18, 1930.

On April 3, 1930, Snider and wife executed an affidavit in which they related the circumstances regarding the Fisher-Wagner lease and swore that in 1927 the farm was owned by Julius Schug and they were merely permissive occupants, and that:

"At no time did your deponents ever have title to or interest in the aforedescribed farm other than as before mentioned, but to the best of their knowledge title has always been and still is in Julius Schug."

This affidavit was later used in the settlement of a suit by the Schugs against the Pure Oil Company,

Snider being an active participant in aiding them to secure the cancellation and release of the claims of the Pure Oil Company to drilling rights on this land.

The Mammoth lease resulted in productive drilling and considerable revenue to the Schugs. In 1931, Mr. Schug determined that he would convey the land in question to Mrs. Snider, but would reserve to himself one-half of the royalties under the lease. He accordingly delivered a deed, in which his daughter Caroline was named as grantee, to Harold Schaffer, his grandson, as escrow agent to be held by him until $2,850 was paid by Mrs. Snider or he had received this amount in royalties. Plaintiff claims this was the balance due at the time upon the original land contract, in any event the parties agreed upon this amount. After the conditions of the escrow were fully performed, the deed was recorded by Schaffer and then delivered to Mrs. Snider. Plaintiff joined with his wife, on June 15, 1932, in executing a receipt and release to the escrow agent.

Plaintiff filed this bill of complaint in 1933 in which he recites continuous possession of the premises since 1908 and alleges an oral agreement on the part of the Schugs in 1929, before drilling was commenced, to deed the property to plaintiff and his wife when the royalties equalled the unpaid balance, conditioned upon surrender of the original land contract. Plaintiff prayed for an accounting of the royalties received by Schug and specific performance of the written contract of 1908 and the oral agreement of 1929.

During the pendency of the action and after her default as a defendant and appearance as an adverse witness for plaintiff, Mrs. Snider died. The

cause was re-opened by consent to permit the appearance of her heirs and legal representatives and further testimony was taken including that supporting the existence of the 1908 contract.

Over plaintiff's objections defendants introduced in evidence the records of the probate court pertaining to the estate of Caroline Snider, deceased, among these being a sworn inventory filed by James Snider in his capacity as her special administrator, showing title to the south ½ of the southwest ¼ of section 22, town of 16 n. r. 4 w. (the property in question) in his deceased wife.

The decree of the trial court dismissed plaintiff's bill of complaint against all of the defendants except plaintiff's deceased wife, Caroline, and her heirs, so that we assume all that is actually in controversy in the appeal before us is the disposition by Julius Schug of one-half of the one-eighth royalties which by his last will and testament went to his widow, Caroline Schug. This, we further assume, by reason of plaintiff's request that we enter a decree requiring the executors and the widow to convey to him all of the oil, gas and minerals reserved by him in the deed to Mrs. Snider and pay to him $6,058.10 collected in royalties by the grantors in his lifetime as well as those collected by either of them since October 1, 1933, Mr. Schug having died testate on April 15, 1933.

Specific performance of contracts, whether oral or written, is a remedy of grace and not of right; it rests in the sound discretion of the court to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case. *McClellan* v. *Moore,* 272 Mich. 630.

The original land contract was destroyed but witnesses other than plaintiff testified to its existence

though not to its contents, and some of them most vaguely. Such proofs are not sufficient to comply with the rule that greater certainty is required in an action of specific performance than in an action at law and that the terms of the contract sought to be enforced must be clear and unambiguous. *Lippman* v. *Featherston,* 247 Mich. 153. This of necessity is especially so if an oral contract is sought to be enforced.

Defendants argued below and urge here that plaintiff is estopped by his inconsistent acts with relation to the property. Plaintiff says estoppel must be pleaded. He is correct in his conclusion (Court Rule No 23, § 3 [1933], and *Stolte* v. *Krentel,* 271 Mich. 98), but mistaken in his premise. Estoppel is pleaded in defendants' answer to paragraph 10 of the bill of complaint. It is there pointed out that plaintiff and his wife stated, in the affidavit hereinbefore mentioned, that neither written nor oral contracts existed and that they were only occupying the premises by permission.

Plaintiff Snider, when confronted with a copy of this affidavit, first objected to its consideration and then admitted its execution, but denied knowledge of its purport, explaining that at the time he was acting without benefit of counsel. Mrs. Snider remembered signing the affidavit but not much about its contents. Both intimated rather strongly that their signatures were secured through the fraudulent representations of Leebove. On the other hand, the testimony of reputable attorneys on both sides of the Pure Oil-Schug controversy is far from comforting to plaintiff and the impression is inescapable that Snider knew the purposes for which the affidavit was executed. Furthermore, the Schug-Mammoth lease was witnessed by plaintiff and he signed his wife's

receipt for her deed when he must have known that it was not in conformity to his claimed oral agreement with the grantor. Later he inventoried the land as being the sole property of his deceased wife. Thus we find four separate written admissions by him of nonownership and two of them under oath.

Plaintiff says that his interest in the land may not be surrendered except as provided by statute. See 3 Comp. Laws 1929, § 13411. This statute includes "by act or operation of law" as well as "by deed or conveyance in writing."

A recent statement on this question is found in *Spitzley* v. *Holmes*, 256 Mich. 559, where we said at page 563:

"We have repeatedly held in many cases, some not presenting as strong equities against the defendants as the instant one, that misleading conduct on the part of an owner will estop him from asserting a different title than the instruments purport to convey. *Craig* v. *Crossman*, 209 Mich. 462, 480; *Stevens* v. *Wakeman*, 213 Mich. 559. In *Stevens* v. *DeBar*, 229 Mich. 251, the rule is stated as follows:

" 'This court has consistently held that title to real estate may not be created by estoppel, but in numerous cases this court has also held that a party may estop himself after the arrangements have been fully executed from asserting that the title he by his own acts has created or aided in creating is not the true title.' "

The cited case of *Stevens* v. *Wakeman, supra,* is based upon a factual situation somewhat comparable to the instant case. See, also, *Kimball* v. *Batley,* 174 Mich. 544; *Kraus* v. *Vandevanter,* 237 Mich. 168; and *Hiles* v. *First National Bank at Flint,* 237 Mich. 278.

Plaintiff by his bill in equity is appealing to the conscience of the court and if his conduct is inequitable, he should be denied relief, *Gee* v. *Gee,* 254 Mich. 415, for equity looks at the whole situation and

grants or withholds relief as good conscience dictates. *Sun Life Assurance Co. of Canada* v. *Allen,* 270 Mich. 272, 286.

Appellees' brief neither contains a statement of the questions involved nor does it indicate acceptance of appellant's statement of such questions. Court Rule No. 68 (1933).

Two of appellant's questions have to do with matters of evidence. The first is with respect to the testimony of Caroline Snider who was called by the plaintiff for cross-examination under the adverse party statute. 3 Comp. Laws 1929, § 14220. Objection was made by defendants to her testimony not because of whether or not she was an adverse party, but rather because she was testifying to matters equally within the knowledge of her deceased father whose estate was an opposite party. 3 Comp. Laws 1929, § 14219. The trial court's ruling as to this testimony was favorable to appellant and therefore cannot be questioned by him.

After re-opening of the cause, following the death of Mrs. Snider, the court over objection received in evidence the proceedings of the probate court in the matter of the estate of Caroline Snider, deceased; there was also received over plaintiff's objection the affidavit of nonownership heretofore referred to. Appellant urges that this was error because neither was pleaded as an affirmative defense. See Court Rule No. 23, § 3 (1933). We have already indicated that defendants' answer pleaded estoppel. This was sufficient compliance with the rule to put plaintiff on notice that defendants would prove that plaintiff had denied ownership of the property. Plaintiff's sworn inventory in the probate file was at least a written admission by him in disparagement of his claim of title; such evidence is admissible. *Rees* v.

*Collins,* 259 Mich. 48. Plaintiff made no attempt to explain or rebut this although such admissions against interest may be explained, are not conclusive and plaintiff was not estopped from showing the contrary. *Bullen* v. *Wakefield Crushed Stone Co.,* 235 Mich. 240, and *Guarantee Bond & Mortgage Co.* v. *Hilding,* 246 Mich. 334.

Appellant's remaining questions may be summed up in this fashion: Assuming proof of the original written contract and subsequent oral agreement to convey, is plaintiff entitled to the specific performance of either or both?

This appeal in an action for specific performance is a hearing *de novo. Link* v. *Diamond Crystal Salt Co.,* 228 Mich. 498. We are confined to the case as presented and although we are mindful of the advantage possessed by the trial judge before whom the witnesses appear in person, *Halicki* v. *Halicki,* 244 Mich. 341, we should and do carefully weigh the evidence. If the proofs do not sustain the allegations of the bill or if plaintiff by his conduct is estopped to maintain his claims, the bill should be dismissed. *Booth* v. *Thompson,* 49 Mich. 73, and *Hiles* v. *First National Bank at Flint, supra.* We have examined the record in the light of the admonitions as to this character of testimony laid down in *Denevan* v. *Belter,* 232 Mich. 664, and conclude that plaintiff has not made out a case entitling him to the equitable relief of specific performance.

The decree is affirmed, with costs.

North, C. J., and Fead, Wiest, Butzel, Edward M. Sharpe, and Toy, JJ., concurred. Potter, J., took no part in this decision.