# OCTOBER TERM, 1922.

## KINNEY v. KINNEY.

1. CONTRACTS—BENEFICIAL TO SECOND PARTY—SLIGHT PROOF OF ACCEPTANCE SUFFICIENT.

   Ordinarily, when a contract or agreement is asserted by the first party, which is very beneficial to the second party, slight proof will suffice to establish the fact that it was agreed to and accepted by the second party.

2. SPECIFIC PERFORMANCE—NOT A MATTER OF RIGHT BUT RESTS IN DISCRETION OF COURT.

   The specific enforcement of contracts, whether written or oral, is not a matter of strict legal right, but is one that rests in the sound discretion of the court.

3. SAME—PROOF MUST BE CLEAR

   A contract must be clearly proved before it will be specifically enforced.

4. SAME—MUTUALITY—INSUFFICIENT PROOF.

   An oral contract by which a father agreed to give all of his property to his children at his death, which has for its support the written admission of the father reciting a consideration rendered and to be rendered, which was denied by all of the children but one, will not be specifically enforced; the proof being insufficient to show that the agreement was intended to be mutually binding.

5. EVIDENCE—WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—OPENING DOOR.

   In a suit for the specific enforcement of an oral contract with plaintiffs' father, since deceased, the introduction in evidence by plaintiffs of the father's written statements with reference to the establishment of the contract opened the door for the other parties to the contract to testify on the same subject.

Appeal from Iron; Flannigan (Richard C.), J. Submitted June 13, 1922. (Docket No. 74.) Decided October 4, 1922.

Bill by Adelia V. Kinney and others against Mary E. Kinney and others for the specific performance of a land contract. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Harriet Freebey* (*Arthur Brown,* of counsel), for plaintiffs.

*M. J. Sherwood, M. S. McDonough,* and *L. A. Lyon,* for defendants.

BIRD, J. This bill is filed to enforce specifically a contract or agreement which it is claimed John S. Kinney made with his children in January, 1916, and also to bar the dower interest of Mary Kinney, his second wife, in his estate. John S. Kinney was for many years a resident of Iron county. He was the owner of a small farm in that county. In 1908 deposits of iron ore were discovered on his premises. He soon after leased the premises and from that time until his death, in 1918, he enjoyed a very comfortable income from royalties derived therefrom. In July, 1912, he made a will in which he gave all of his property to his five living children and one grandchild in unequal proportions. At this time his wife was deceased. At the same time he conveyed all of his property to his daughter Adelia and his son Willard, in trust, for the use and benefit of his children, and directed the income of his estate to be paid to his children, in the proportions designated in the will. By the terms of the trust it was terminated at his death and the property reverted to his estate.

In January, 1916, while in Washington, D. C., he executed what is termed a contract or agreement with

his five living children.    The grandchild was omitted. In view of the fact that this is the paper which we are asked to enforce it will be quoted in full:

"This agreement, made this 3rd day of January, A. D. 1916, by and between John S. Kinney, of Palatka, in Iron county, and State of Michigan, party of the first part, and Laura A. Piper, Willard A. Kinney, H. Aaron Kinney, Adelia V. Kinney, all of the same county and State, and Edith M. Englehardt of Lake Worth, in Palm Beach county, and State of Florida, parties of the second part,

"Whereas, the said parties of the second part are all of the sons and daughters now living of the said John S. Kinney, and

"Whereas, it has been heretofore and continues to be agreed between them and the said John S. Kinney that in consideration of the financial assistance and services rendered and to be rendered by the said parties of the second part, the said party of the first part will give, devise and bequeath unto the said parties of the second part all the property owned by him at his decease, and

"Whereas, the said party of the first part, in pursuance of said agreement did make and execute, to-wit, on the 29th day of July, 1912, his will and testament, devising and bequeathing all of such property to said parties of the second part, and

"Whereas, the said party of the first part has been advised that it will be advantageous to reduce the said agreement to writing, and he is desirous of making said agreement as legally binding as possible,

"Witnesseth, that the said party of the first part, in consideration of the premises and further of the sum of one dollar, hereby covenants and agrees to devise and bequeath to said parties of the second part, all the property and estate, real, personal, and mixed, of which he shall die seized or possessed, and if from any cause he does not leave a last will and testament legally effective for this purpose, then this covenant and agreement shall have the same force and effect in regard to his property as such a last will and testament would have and shall be enforceable at law or in equity, by any appropriate proceedings.

"In testimony whereof he hereunto sets his hand and affixes his seal the day and year first above written.

(Signed) "J. S. KINNEY (Seal).

"Signed, sealed and delivered
in the presence of:
"WILLIAM HENRY DENNIS,
"WM. MEYER LEWIN.
"United States of America,
"District of Columbia—to-wit:

"On this third day of January in the year of our Lord one thousand nine hundred and sixteen, before me, the undersigned, a notary public in and for said district, whose commission expires on the 27th day of February, 1918, personally appeared John S. Kinney, to me known to be the same person described in and who executed the within and foregoing instrument, who acknowledged the same to be his free act and deed.

"In witness whereof I have hereunto set my hand and affixed my official seal this third day of January, A. D. 1916.

"HARRY F. KENNEDY,
"Notary Public in and for
District of Columbia."

Within a week after the execution of this agreement, John S. Kinney and Mary Hubbard, who afterwards became his second wife, executed an antenuptial agreement in which an annuity of $1,000 was provided for the prospective wife, Mary Hubbard, during the time they lived together as husband and wife, in consideration of which she waived all her interest in the estate of Mr. Kinney. Soon after this they were married and lived together until October, 1918, when Mr. Kinney was killed in an automobile accident at Long Beach, California.

In 1917, Mr. Kinney made another will revoking his former will, in which he again gave all of his property to his children and grandchild, but in different proportions than he did in the 1912 will, subject, however, to a charge of an annuity of $2,400 a year to his widow. In this will his two sons, the defendants,

were made executors. They accepted the trust, offered the will for probate in the county of Iron, and the same was duly admitted. Three children and the grandchild now ask this court to specifically enforce the agreement quoted and also to bar the widow's dower by reason of the antenuptial contract.

Ordinarily, when a contract or agreement is asserted by the first party, which is very beneficial to the second party, slight proof will suffice to establish the fact that it was agreed to and accepted by second party. This case, however, seems to be an exception. The second parties, save Adelia, testified they never made any such agreement with their father. Some of them testified that no such services were rendered as are referred to by him in the contract, and that they never agreed to render any future services, and most of them were without knowledge of the agreement until after their father's death. These circumstances make one curious as to just why the agreement was made by Mr. Kinney. The record discloses that Mr. Kinney's relations were such with a Mrs. McNabb that he feared, and was in fact threatened with, a breach of promise case. If Mr. Kinney was fearful of this as he was making ready to marry Mrs. Hubbard in 1916 that would perhaps account for his making this rather peculiar contract. If such were his fears the agreement or contract was simply a barrier which he threw up to protect himself in case Mrs. McNabb should resort to the courts for damages after he had married Mrs. Hubbard. Mr. Kinney's subsequent conduct in making another will in 1917 rather indicates that he did not understand that the paper was a binding one, otherwise he would quite likely have made some reference in the second will to the terms of the first will or to the agreement. But whatever was the inducing cause for making the agreement we are now asked to enforce a contract specifically, the

existence of which is denied by the second parties. We are asked to enforce a contract, the consideration of which is denied by the second parties, and we are asked to enforce a contract which is not clear as to the respective proportions each child shall receive.

In referring to the rule with reference to the enforcement of contracts specifically, Cyc. says:

"In general, the contract must have the essentials of a contract valid and binding at law in order to be enforceable in equity. It must be a concluded contract; there must have been a clear mutual understanding and a positive assent on both sides as to the terms of the contract; it must be sufficiently definite and certain; the parties must have the capacity to contract; it must be upon a valuable consideration; and it must not be illegal." 36 Cyc. p. 543.

This court has repeatedly held that the specific enforcement of contracts, whether written or oral, is not a matter of strict legal right but is one that rests in the sound discretion of the court. *Harrison* v. *Eassom,* 208 Mich. 685; *Hager* v. *Rey,* 209 Mich. 194; *Slatkin* v. *Schumer,* 210 Mich. 513; *Standard Oil Co.* v. *Murray,* 214 Mich. 299.

One of the cardinal essentials is that a contract must be clearly proved before it will be specifically enforced. *Wilson* v. *Wilson,* 6 Mich. 9; *Chambers* v. *Livermore,* 15 Mich. 381; *Ritson* v. *Dodge,* 33 Mich. 463; *Brown* v. *Brown,* 47 Mich. 378; *Kimball* v. *Batey,* 174 Mich. 544.

"In order to authorize the enforcement against the estate of a decedent of an alleged parol agreement whereby the decedent promised to leave all his property to the claimant, such agreement must be clearly established by the testimony of disinterested witnesses, and it must be shown that such agreement possessed all the essentials of a contract; *that it was fair and equitable, and that the terms thereof were definite and certain."* *Hanly* v. *Hanly,* 105 App. Div. 335 (93 N. Y. Supp. 864).

The contract which is offered by plaintiffs in this case was an oral one. It has for its support the written admission of one party and against it is the denial of the other parties. The admission of first party recites a consideration rendered and to be rendered, which the other parties deny. The admission of first party recites an agreement which the second parties, except Adelia, deny. Under the proofs in the case we are in grave doubt as to whether any agreement was ever made between the parties which was intended to be mutually binding on them. Whether they did so agree is involved in too much doubt to admit of enforcement. The agreement upon which plaintiffs rely appears to have been made to serve some ulterior purpose between the first party and others who might have some future interest in the subject-matter of the contract. Tested by the rules by which courts are guided in the specific enforcement of contracts, the so-called agreement should not be enforced as prayed, for the reason that its existence has not been clearly established.

The chancellor was of the opinion that the introduction in evidence of Mr. Kinney's written statements with reference to the establishment of the contract opened the door for the other parties to the contract to testify on the same subject. This conclusion appears to be justified by the fact that plaintiffs introduced the contract made by John S. Kinney, which stated material facts which were equally within the knowledge of defendants. We are also in accord with the chancellor in his conclusion that Mary Kinney's dower rights should be determined in the ejectment suit filed by her before this suit was begun. There are other interesting questions discussed in the record, but they become unimportant by reason of the view we take of the proofs that the contract has not been established with enough certainty to permit of en-

forcement.   The chancellor who heard the case refused to enforce the contract and dismissed plaintiffs' bill.   We are in accord with his conclusions.

The decree of the trial court will be affirmed, with costs of this court to the defendants.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, SHARPE; MOORE, and STEERE, JJ., concurred.