JONES *v.* IRELAND.

1. SPECIFIC PERFORMANCE—ADOPTION—CONTRACTS—PERFORMANCE—
EVIDENCE—SUFFICIENCY.

> In a suit for the specific performance of a contract
> whereby deceased agreed with plaintiff's mother to adopt
> plaintiff, treat her as her own daughter, and at her
> death leave to plaintiff all of the property of which de-
> ceased should die seized and possessed, the finding of the
> court below that said contract was made, that it was fully
> performed by plaintiff's mother, and that it is binding
> on deceased's estate, *held,* justified by the record.

3. MORTGAGES — DEED AS MORTGAGE—ESTATES OF DECEDENTS—AC-
COUNTING—WILLS.

> A deed executed by deceased in her lifetime conveying
> all of her real estate on condition that grantee pay to her
> a stipulated sum monthly, and reserving to herself ab-
> solute control of the property with the right to sell it
> upon repayment to grantee of all moneys so advanced
> by him, where the value of said real estate was greatly
> in excess of the sums advanced, *held,* to be in effect
> but an equitable mortgage entitling grantee only to re-
> payment of the money advanced, and not to defeat plain-
> tiff's rights as residuary legatee under the will, in pur-
> suance of prior binding contract.

Appeal from Wayne; Lamb (Fred S.), J., presiding.
Submitted October 17, 1923. (Docket No. 115.) De-
cided December 19, 1923.

Bill by Ethel Harris Jones against John Ireland,
Albert S. Harris and others for the specific perform-
ance of a contract. From a decree for plaintiff, de-
fendant Harris appeals. Affirmed.

*William R. Grover* and *Lodge & Brown,* for plaintiff.

*Howard H. Campbell,* for appellant.

On specific performance as affected by agreement to adopt and
bequeath or devise property to child, see notes in 15 A. L. R.
233; 27 A. L. R. 1325.

On specific performance of contract to leave property to adopted
child in consideration of his living with promisor, see note
in 44 L. R. A. (N. S.) 760.

Moore, J.   This case was heard in open court. The chancellor filed a written opinion therein as follows:

"The bill was filed in this cause for the specific performance of a contract whereby the entire residue of the estate of Sarah A. Harris, deceased, should be declared to be the sole property of the plaintiff, Ethel Harris Jones, and to determine the rights, if any, of Albert S. Harris, one of the defendants herein, in and to such estate, or any part thereof.

"From the testimony submitted in the case it appears and the court finds:

"That in the year 1895 and for some years prior thereto, Edward R. Harris and his wife, Sarah A. Harris, resided in the city of Detroit, where said Edward R. Harris was a building contractor; that both Edward R. Harris and Sarah A. Harris are now deceased;

"That during the year 1895, and while she was yet but three weeks old, the plaintiff was brought into the home of Edward R. and Sarah A. Harris and immediately found a place in the affections of both, and the latter early conceived the idea of having the young child for her daughter and making her such by adoption; that Mrs. Harris communicated her desire in this respect to the mother of the child who was, at that time, a maid in the home of Mr. and Mrs. Harris, and after nearly a year of effort in this connection the mother signified her willingness to let Mr. and Mrs. Harris have the child for their own daughter upon the promise of Mrs. Sarah A. Harris that the child would be raised by Mr. and Mrs. Harris as their own daughter, and at the death of Mrs. Sarah A. Harris would succeed to the property of which Mrs. Harris should die seized and possessed; that the real mother, Jennie Wilson, consented in writing to enter into the execution of the necessary papers to carry out this expressed desire and consent, but so far as the records show no papers of adoption were actually made out, although Sarah A. Harris repeatedly said to her friends and neighbors that she had adopted the little child as and for their own; that she was later christened as Ethel Harris, and Edward

R. Harris and Sarah A. Harris designated as her father and mother respectively;

"That the plaintiff became a part of the Harris family, was regarded and treated by both Mr. and Mrs. Harris as their daughter, carefully kept in ignorance of the fact that she was not their flesh and blood, and that it was not until long after she had been in school that she had any reason to even suspect that she was not the own child of Edward R. and Sarah A. Harris; that from the very first until the death of Sarah A. Harris this young girl was in every respect a dutiful child and daughter to both Mr. and Mrs. Harris;

"That shortly before the engagement of the young woman, the plaintiff, to Carl C. Jones, her husband, she learned that she was not in fact the own daughter of Edward R. and Sarah A. Harris; that she was then urged by Mrs. Sarah A. Harris, to continue the relation that had so long existed, that of mother and daughter, and did so; that on learning of the engagement of Ethel to Carl C. Jones, Mrs. Harris expressed to both Ethel and Carl her great desire to have the plaintiff live with her until her death, saying to them that she would not consent to the marriage unless they would agree to stay with her and take care of her as Ethel had been doing; that they consented to do as requested by Mrs. Harris and did it;

"That at, or about the time of the marriage of Ethel to Carl, Mrs. Harris again expressed her desire that the plaintiff and her husband should live with Mrs. Harris, repeating her statement so often made that she had arranged her affairs so that all her property would go to the plaintiff, but told both the plaintiff and her husband, who had been talking of going to live elsewhere, that if they lived anywhere else than with her, she would not leave all her property to plaintiff, but, on the contrary, if they did continue to live with her until her death, plaintiff would be given all of her property; that this understanding was had prior to the month of December, 1917, and that in compliance with it plaintiff and her husband continued to make their home with Mrs. Harris until her death;

"That after the death of Mr. Harris, in 1903, the plaintiff as her age and strength would permit, gradually assumed charge of the home, doing much of the

heavy work, besides tenderly, willingly and dutifully caring for Mrs. Harris in her sickness and infirmity; that in every respect the plaintiff fulfilled to the letter her part of the contract; ·

"That Edward R. Harris died testate, in the year 1903; that by the terms of the will Albert S. Harris, one of the defendants herein, was named as executor; that he duly qualified and has acted as such executor from thence hitherto, and is still so acting, the estate not having yet been closed; that also, by the terms of the will, said executor was required to pay to Sarah A. Harris an annuity of fifty dollars per month as long as she lived; that he continued to pay such annuity to said Sarah A. Harris as long as she lived, out of the estate of Edward R. Harris as long as there were funds in said estate from which to pay it, and from the executor's own funds after the funds in such estate had been exhausted; that there is nothing in the record to show that Sarah A. Harris was ever given to understand that said annuity, or any part of it, was being paid by or from other funds than such estate as was left by her husband Edward R. Harris;

"That after the death of Edward R. Harris, said Albert S. Harris was a frequent visitor at the home of Sarah A. Harris, during her lifetime, rendered her various services in the conduct of her affairs, such as paying taxes and looking after matters of that kind; that he was looked to and trusted by Sarah A. Harris; that by reason of such confidence the said Albert S. Harris became and was fully · acquainted with the affairs of Sarah A. Harris, knew that she had made two wills by the terms of each, all the property, of which she might die seized and possessed was left to Ethel Harris Jones, and was cognizant of this fact prior to the 19th day of December, 1917;

"That on the 19th day of December, 1917, Sarah A. Harris was seized of certain real estate in the city of Detroit valued at the sum of twenty-five thousand dollars; that without consideration, other than the continuance of the payment to her of the annuity of fifty dollars per month, provided for her by the terms of the last will and testament of her husband, Edward R. Harris, Sarah A. Harris, on the said 19th day of December, 1917, executed a deed of conveyance to Albert S. Harris, which was prepared some time

before by him without consultation with her, and covering all the real estate then seized and possessed by Sarah A. Harris, now deceased; that said conveyance contained a defeasance clause by the terms of which Sarah A. Harris could at any time defeat the operation of said deed by payment to said Albert S. Harris the sums he had advanced for her benefit or the benefit of her property; that up to the time of the death of Sarah A. Harris, Albert S. Harris had advanced to her and for her benefit the sum of nine hundred fifty dollars; that she at no time exercised her right to defeat the operation of the deed;

"That since the death of Sarah A. Harris, said Albert S. Harris has had charge of the said real estate and has received as revenue therefrom $9,425 and has expended the sum of $3,710.76;

"That the plaintiff offered, at the hearing to do equity by the defendant, Albert S. Harris, and repay him any sums that he may have advanced for the use and benefit of Sarah A. Harris in her lifetime.

"Conclusions.

"1. An express contract was made between Jennie Wilson, plaintiff's own mother, and Sarah A. Harris, in her lifetime, by which said Jennie Wilson surrendered her child, the plaintiff, to Sarah A. Harris, in consideration that said Sarah A. Harris was to take the child, treat her as a daughter and leave said child the property of which the said Sarah A. Harris died seized and possessed. This contract was fully performed by Jennie Wilson, was binding on Sarah A. Harris in her lifetime, and is now binding on her estate.

"2. At the time of the engagement of the plaintiff with her husband, Carl C. Jones, and again shortly after the marriage of the plaintiff to Carl C. Jones, it was expressly understood and agreed by and between Sarah A. Harris and the plaintiff, that, if the plaintiff would continue to live with Sarah A. Harris during her lifetime as her daughter, and care for her dutifully as a daughter should, then all the property of which the said Sarah A. Harris died seized and possessed would belong to said plaintiff. Under the facts found, the plaintiff has fulfilled her part of this agreement and the estate of Sarah A. Harris is now bound by it.

"3. Albert S. Harris, one of the defendants, had actual and legal notice of the plaintiff's rights in and to the property in controversy and whatever he did in relation thereto. he did with notice of her rights therein.

"4. At the time of the deed of conveyance from Sarah A. Harris to Albert S. Harris, December 19th, 1917, the said Albert S. Harris was acting in a fiduciary relation with Sarah A. Harris and was in no position, under the law, to make a contract with her from which he was certain to derive such an unconscionable profit.

"5. The deed of conveyance, dated December 19th, 1917, under which defendant Albert S. Harris claims, must be held to be an equitable mortgage and at best, entitles him only to repayment, with interest, of all sums of money advanced by him, acting in good faith to Sarah A. Harris, in her lifetime, and for the use and benefit of her estate, since her death, if any.

"6. The moneys received by defendant Albert S. Harris as the income of said property were received by him in trust for the benefit of Sarah A. Harris in her lifetime, and her estate, after her death, and must now be held to be held by him in trust for said estate, and for the plaintiff as the residuary legatee of said estate, if her right thereto shall be finally determined in her favor, and he should account to her therefor. In said accounting he should be allowed credit for all sums paid by him to Mrs. Sarah A. Harris or for her use and benefit and for the use and benefit of the estate, while relying upon said deed of conveyance, dated December 19, 1917, together with interest thereon.

"A decree may be prepared and settled to carry out the conclusions drawn as above outlined."

A decree was afterwards signed in accordance with the opinion.

The defendant Albert S. Harris has alone appealed the case to this court.

Counsel for the appellant urges that a discussion of the facts must necessarily revolve around a discussion of two groups of findings in the opinion of the chancellor who tried the cause, and contends (1) "The

contract as alleged has not been established;" and
(2) we quote from the brief:

"The second group of findings are immaterial find-
ings to the case alleged in this bill of complaint. It
is one thing to ask for the specific performance of an
oral agreement, and incidentally to determine that this
deed made by a party to the agreement has breached
the agreement and to hold that the third party took
with notice. This theory does not attack as void
the deed but instead holds the deed defeats the prior
equity. It is an entirely new theory and one not
alleged nor ever claimed on the hearing that Ethel
Harris Jones can have the deed of December 19, 1917,
set aside upon allegations that Albert S. Harris had
this instrument executed under circumstances indi-
cating fraud, and knew of it."

Counsel discusses at great length each of these
groups, and urges very earnestly, quoting at great
length from the record, that there has been an entire
failure to show that any contract was made between
the mother of the plaintiff and Mrs. Harris, by which
the plaintiff was to have the property of Mrs. Harris,
which can be enforced in equity; counsel citing in
support of this contention *Kinney* v. *Kinney,* 220 Mich.
311; *Smith* v. *Lull,* 152 Mich. 126; *Kimball* v. *Batley,*
174 Mich. 544. As will appear later we think a
reference to those cases will show they are readily
distinguishable from the case we are now considering.

The mother of the plaintiff, Mrs. Wilson, Mr. Harris
and Mrs. Harris are all dead, so that the plaintiff could
not put into the record their testimony as to what was
said and done by them and their version of the reason
why the plaintiff became an inmate of the Harris
home when she was a mere infant, and continued to
be an inmate until Mr. and Mrs. Harris were both
dead. There are however some very significant bits
of testimony that throw light upon the occurrences.
After the child had been an inmate of the Harris home
for a little time, and the mother had been importuned

to let Mrs. Harris have the child, the mother wrote the following letter:

"192 Ferry East, December 19th.
"To Mrs. E. R. HARRIS & BABY:
"You may go on with your Christmas for your baby. I must bear it for baby's sake. I will try to think about baby's happiness there with you instead of misery with me. I must not be selfish and stand in the way of my darling's good home. * * * Let me know when and where you want me to sign your paper. I do not know how soon the day may come when I cannot get out in afternoon but could go in evening but there is no rush that I know of."

The record of the old Grace Church in Detroit shows the following:

"BAPTISMAL RECORD.
"Name—ETHEL HARRIS
Saturday.                    254 Lafayette Ave.
Baptized May 8th, 1897.
Place—Detroit, Michigan.
Born—January 22, 1895.
Place—Detroit, Michigan.
Parents—George Wilson & Jennie Bothwell, Real.
Adopted Parents — Edward Richard Harris & Sarah Ireland.
Address
Sponsors—Edward Richard Harris
            Sarah Harris
            Marietta Blenner Hassett."

Miss Blennerhassett was a teacher in the public schools and was for some years an inmate of the Harris household. She testified in part:

"She—Mrs. Wilson—told Mrs. Harris she had a little daughter, and Mrs. Harris told the family. We were very anxious to see the new baby. Mr. Harris was going away for a week end, so Mrs. Harris said: 'You may bring the baby here while Mr. Harris is away.' She did so; and we made a cradle for the baby out of a clothes basket and an old rocking chair; and the baby came to stay from Saturday until Monday—and she never went away. * * * From the

very word 'Go' Mrs. Harris wanted that baby for herself, but had no idea the mother would give her up. And as time went on, the baby became so precious that efforts were made by Mrs. Harris to have Jennie give up the baby. Ethel was not Mrs. Harris' daughter, but all at once she was.

"Q. You say efforts were made by Mrs. Harris to have the mother, the real mother, give Ethel up to Mr. Harris. What was there that makes you give that testimony?

"A. Mrs. Harris could give the child everything.

"Q. Well, did she say this?

"A. Why, sure she did.

"Q. That's the point. To whom did she say she could give her everything?

"A. To the mother, to me and to everyone whom she came in contact with. * * * I was present when she said this thing to the mother, she could give her everything. I heard her tell Jennie so. Jennie was the name of the mother. The mother's other name was Wilson. I heard Mrs. Harris tell Jennie time and time again that she wanted this baby and would care for her as her own daughter. I heard that. * * *

"Ethel was more than two and one-half years old when Jennie went away. It seems to me that Jennie was very, very willing long before Ethel was a year old, to give her to Mrs. Harris. I heard Jennie say that Ethel could belong to Mrs. Harris. This was after Mrs. Harris said she was in position to give Ethel everything and take good care of her, and that she would do that."

The following is from the testimony of Miss Blennerhassett:

"Mrs. Harris invited Dr. and Mrs. J. A. MacMillan to her home. I don't know whether it was before dinner, during dinner or after dinner, but that day. She told them that her health was poor; and that she was anxious for Ethel's future, and asked them if they would not become Ethel's guardian if she were to die, because she said, 'She would be no care to you because she is a good child, and she will have plenty of money to support her. I don't ask you anything

for her, only let her be a member of your family and get your care.' I remember this was after Mr. Harris' death."

Dr. MacMillan's testimony confirms these statements.

Mrs. MacMillan testified in part:

"The only actual conversation I ever had with Mrs. Harris was one when she invited Dr. MacMillan and myself to the house. She said that she had adopted Ethel and Mr. Harris had, too; and she wished we would act as guardians in case anything happened to her; that the child would be no burden on us because there would be plenty of means when she would inherit what she had. What Mr. Harris had left her would be Ethel's after her death. That was my understanding of it; as an adopted daughter. I remember she distinctly said the child would be no burden."

Mrs. Harris made a will leaving substantially all her property to Ethel. Mr. Harris was a 32d degree Mason. He knew he was going to die. He wrote to his lodge a letter, from which we quote:

"Now that I am listening to the call of the dread messenger, feeling the clutch of his hand upon me, knowing that I must so soon sever every earthly tie, I have one request to make to each of you, my brothers. If I leave with you one memory of work well done or, at least, worthily attempted, grant me this boon.

"My home has always been the abode of peace. Here I have always found rest, welcome and good cheer, and every comrade who crosses our threshold has felt that a brother Mason is always a welcome guest, and now in its desolation I ask your kindly consideration for my wife and the little daughter in our care. They will need your brotherly remembrance, my wife in the grief and loneliness which I can see will be her portion, and the little girl whose tender years and gentle nature make her so unfitted to battle with the cares of life.

"Will you, my brothers, watch over and guard them for my sake?"

When Ethel was married the following announcement was sent out:

"Mrs. Sarah A. Harris
Announces the marriage of her daughter
Ethel
to
Mr. Carlisle Clifford Jones
on Saturday, August the twenty-sixth
Nineteen hundred and sixteen.
Detroit, Michigan.
At home
After September the fifteenth
104 Brainard Street."

Mrs. Harris then lived at 104 Brainard street. A large number of witnesses, neighbors and friends of Mrs. Harris, were called as witnesses for the plaintiff, and we think the first conclusion of the chancellor we have quoted is fully justified by the record.

The case comes within the principles stated by Justice WIEST in *Bassett* v. *Publication Society*, 215 Mich. 126 (15 A. L. R. 213), and the cases therein cited. Among the cases cited by Justice WIEST was the case of *Winne* v. *Winne*, 166 N. Y. 263 (59 N. E. 832). One of the head notes reads:

"Specific Performance of Contract to Maintain Infant and Make Him Sole Heir. Where, upon the trial of an action for specific performance, the court found upon sufficient proof that a written agreement, had been made by a childless person with plaintiff's mother for his benefit, to the effect that the former would maintain the plaintiff, who at the time was an infant, as her own child, and at her death give him all her property, and make him her sole heir if his mother would surrender to her his custody and control and would have nothing more to do with him; that the mother thereafter ceased to have any control over him; that he lived with such person until his majority, was given and accepted her name, performed the duties of a faithful son, and the relations usually existing between parent and child existed between them and continued until her death, and that she died intestate, a

decision that the contract was valid, was based upon a sufficient consideration, had been fully performed by the plaintiff and his mother, was binding upon the heirs and next of kin of the decedent, and that the plaintiff was entitled to a specific performance thereof is proper, and under such circumstances will not be disturbed by the Court of Appeals."

In the case of *Van Dyne* v. *Vreeland,* 11 N. J. Eq. 370, the headnotes read in part:

"Where a father makes an agreement in reference to his infant child, from which benefits are to accrue to the child upon his performance of the agreement, after performance, the child, in his own name, may file his bill to enforce the agreement.    The party for whose benefit the agreement is to be performed, and especially if any valuable portion of the consideration has been rendered by him, has the legal right to enforce it.    It is of no consequence that the promise to fulfil it was not made directly to the person who is entitled to remuneration.    It is enough if it was made by some one who had authority to make it on his behalf.

"The father of an infant child made an agreement with an uncle of the infant, at the uncle's request, to this effect that the uncle should take the infant and adopt him as his own child, and that he would treat him as his own son, and that the property he should have should be given to the child, so that it should belong to him at the death of the uncle and his wife. The uncle took the child and had him baptized, and the child assumed his surname, and lived with him twenty-five years.    *Held,* that the child might maintain his bill upon the agreement after such performance."

We do not need to spend much time with the second group of findings discussed by counsel.    A consideration of the deed itself, which was drawn by the defendant, will be sufficient.    The consideration is stated to be

"that said party of the first part for and in consideration of the sum of Fifty ($50.00) Dollars to her paid

April 1, 1917, and Fifty ($50.00) Dollars May 1, 1917, and an agreement by second party to pay to her a like sum of Fifty ($50.00) Dollars each month thereafter during the term of her natural life, the receipt of first payments whereof is hereby acknowledged, does by these presents grant, bargain, sell and confirm unto said party of the second part all," etc.

The deed contained the following:

"Said Sarah A. Harris reserves absolute control of above described property by herself or her tenants during the term of her natural life, and also reserves right to at any time sell the property, but agrees before doing so to repay to said second party, his heirs or assigns, any sum of money that he in his individual capacity may have paid her under this agreement, or as executor of the estate of E. R. Harris he may have advanced to her over and above the amount specified in will of E. R. Harris. Should first party avail herself of this option second party shall quitclaim any right, title or interest in above described premises."

We think what we have quoted from the deed indicates its purpose, and the giving of this paper by Mrs. Harris should not defeat the agreement that she had previously made.

The decree is affirmed, with costs to the appellee.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.