## DENEVAN v. BELTER.

1. Contracts—Oral Contract Whereby Plaintiffs Are to Receive Property at Owner's Death Must be Clearly Proven.
An oral contract whereby plaintiffs were to receive all of the property of a distant relative in return for caring for her during her lifetime, working the farm and giving her a share of the products, must be established by clear and convincing evidence.[1]

2. Witnesses—"Interested Witness" Defined.
An "interested witness" is one who has a pecuniary interest, having prospect of gain or loss.[2]

3. Same—Relationship Not Test as to Whether Witness Interested.
Relationship does not constitute a witness an interested one, but the fact of relationship should be considered as regards credibility.[3]

4. Contracts—Oral Contract—Evidence—Sufficiency.
The conclusion of the court below that the contract as alleged was established, held, justified by the record.[4]

5. Frauds, Statute of—Part Performance of Oral Contract—Sufficiency.
Where plaintiffs fulfilled every obligation under their oral contract, such part performance was sufficient to take the case out of 'the statute of frauds, although, because of the death of the other party, their services were required for only a few weeks.[5]

Appeal from Montcalm; Hawley (Royal A.), J. Submitted October 8, 1925. (Docket No. 43.) Decided December 22, 1925.

Bill by Lester Denevan and another against Estina Belter and others for specific performance of a land

[1]Wills, 40 Cyc. p. 1072; [2]Witnesses, 40 Cyc. p. 2280; [3]Id., 40 Cyc. p. 2282 (Anno); [4]Specific Performance, 36 Cyc. p. 692; [5]Id., 36 Cyc. p. 674.

Specific performance of contract to leave property in consideration of services or support, see note in 44 L. R. A. (N. S.) 733.

contract.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*Griswold & Ganton,* for plaintiffs.

*D. Hale Brake,* for defendants.

CLARK, J.   Plaintiffs had decree for specific performance of an oral agreement to convey.   Defendants appealing contend:

"(1) That the making of any such contract as that alleged was not proved with the degree of certainty required in such cases.

"(2) That the acts of performance alleged and relied upon to take the case out of the statute of frauds do not with sufficient certainty and exclusiveness point to the alleged contract."

Frederica Haise lived alone on a 40-acre farm in Montcalm county.    She was "seventy some" years old.    Her husband had been dead eight years.    She had no children.    She had a brother and two sisters living in Michigan.    There had been other brothers, and perhaps sisters, of whom nothing had been heard since the known members of the family left Germany about 40 years ago.    Mrs. Haise owned 20 acres of the farm in her own right.    Her husband had had the title to the other 20 acres.    There had been no administration of his estate, being the 20 acres.    Mrs. Haise was entitled by inheritance to a third of such estate, the remainder belonging to children of Mr. Haise by a former marriage.    Such children asserted no rights in the land during the life of Mrs. Haise. Her land, including the distributive share, was appraised at about $2,300 and her personal property at about $3,500.    She owed practically nothing.

Plaintiff Leta Denevan was a granddaughter of a sister of Mrs. Haise.    The other plaintiff is her husband.    At the time in question they had been married about one year.    It is established clearly on the record

that Mrs. Haise was, and for years had been, fond of Mrs. Denevan, and that for a long time before her death she had desired and intended that, at her death, her property should go to Mrs. Denevan. In the fall or early winter of 1923, an oral agreement was made between Mrs. Haise and the plaintiffs, by which plaintiffs left their home and with some goods and equipment moved to the farm and lived in the farm house with Mrs. Haise. In behalf of plaintiffs it is claimed that the agreement was that they would care for and support Mrs. Haise while she lived, work the farm, give her annually a part of the products, and in return therefor all of her property was to go and belong to Mrs. Denevan. Mrs. Haise died intestate a few months later. Mrs. Denevan sought conveyances from the heirs, but was unable to get title in that manner. At the instance of heirs an administrator was appointed. Plaintiffs filed this bill making the administrator and the heirs, as far as known, defendants. Witnesses for defendants, more numerous than for plaintiffs, gave testimony based chiefly on claimed declarations or admissions of plaintiffs themselves, tending to show that the agreement in question was to work the farm on shares, and nothing more. Plaintiffs, not disputing that there was a share agreement, in support of their further claim had testimony some of which we quote.

Mrs. Denevan's father testified of a conversation with Mrs. Haise:

"*Q.* She say anything about how long Leta was going to stay?

"*A.* She said she was going to stay with her all the time and take care of her.

"*Q.* Was that all she said about it?

"*A.* She said if she stayed with her she was going to give her the property she had.

"*Q.* When was such conversations?

"*A.* The first I knew of it was along in October.

"*Q.* In 1923?
"*A.* Yes, sir."

A brother-in-law of Mrs. Denevan testified of another conversation with Mrs. Haise:

"*Q.* Was there anything said about the terms and conditions upon which Lester and Leta were living there with her?
"*A.* Yes, sir.
"*Q.* What did she say about that?
"*A.* She said they were going to stay with her.
"*Q.* They were going to stay with her?
"*A.* Yes, sir.
"*Q.* How long?
"*A.* All the while.
"*Q.* What did she say about her property?
"*A.* She said they were to have it.
"*Q.* Have it all?
"*A.* Yes, sir.
"*Q.* What were they to do besides stay?
"*A.* They were to care for her.
"*Q.* Care for her and they were to have all her property?
"*A.* Yes, sir."

Mrs. Louisa Haling, 82 years of age, sister of Mrs. Haise, grandmother of Mrs. Denevan, testified. We quote a part as to a conversation with her sister:

"*Q.* Whether or not she told you that Leta was going to stay with her all the while?
"*A.* She said she gave her the place, she give her everything she had.
"*Q.* Just listen to this question. Did Mrs. Haise tell you Leta was coming to stay with her for good?
"*A.* Yes.
"*Q.* Did she tell you that?
"*A.* Yes, she said so; she say, 'Leta take care of me as long as I live I give her everything."

1. We recognize the rule that a contract such as is claimed must be established by clear and convincing evidence. It is also true that evidence to establish such contracts generally consists, in chief, of

declarations made by the deceased to third persons which evidence is regarded as weak and unsatisfactory, and it must be scrutinized with care. 36 Cyc. p. 692. Appellants say that this court by a quotation found in *Kinney* v. *Kinney*, 220 Mich. 311, at page 316, is committed to the further rule that such a contract can be established only by the testimony of disinterested witnesses, and that plaintiffs' witnesses are interested because related to Mrs. Denevan. If that be the rule we think it does not apply to the witnesses whose testimony has been quoted. An interested witness is one who has a pecuniary interest, having prospect of gain or loss. *State* v. *Easterlin*, 61 S. C. 71 (39 S. E. 250) ; 3 Words and Phrases, 2104. Of course the relation of the witness to the parties is to be considered as regards credibility.

The trial judge had these rules in mind when, in an opinion filed, he reviewed the evidence and found for plaintiffs. He had the advantage of seeing the witnesses and hearing their testimony. A first impression in these cases, under the rules, and in the light of experience, is likely to be hostile to the claim. But in this case as reflection becomes mature it brings conviction that the trial judge has reached the right conclusion. The agreement is equitable. It contravenes no will. It is in keeping with a purpose, long cherished by the deceased. It is sufficiently supported by evidence. The testimony of the sister, Mrs. Haling, is especially convincing. And we quote from the opinion of the trial judge:

"This arrangement would be in accordance with the long cherished wish of the deceased and would explain, as no other theory does, why the plaintiffs, young people, as they were, should be willing to go into this home and upon this farm and undertake the care of this old person, as they did during her lifetime. If they wished merely to rent a farm, it would

have been easy for them to have done so without assuming any burden of responsibility in the way of providing a home and support for an old person and assuming the risk of her whims, caprices and other disagreeable peculiarities and without undertaking the labor and sacrifice incurred in becoming obligated for her care."

See *Prendergast* v. *Prendergast*, 206 Mich. 525.

2. Upon the second point we are in accord with the opinion of the trial judge:

"It is an undoubted fact that the plaintiffs moved upon the premises in question and looked after the live stock and did what work, if any, that was necessary at that season of the year upon the farm. They left their former home for that purpose and surrendered the quiet and retirement of the same for the purpose of complying with the wishes of the deceased and furnishing her that care and companionship which she apparently desired and which she entirely lacked, and furnished such care and companionship, comfort and aid as long as she continued to live. It is true that but little time elapsed between the date of the plaintiffs' removal from the farm and the death of Mrs. Haise, and during that brief period of time but little opportunity was afforded for any outstanding act of part performance. However, it is likewise true that the plaintiffs did all that time and opportunity permitted them to do during the few weeks that they were in the home of the deceased. Accordingly they are entitled to the benefit of the contract, if such contract was entered into, and if they have performed it to the extent that circumstances permitted, the deceased received what she bargained for, and for which she was willing to compensate the plaintiffs by giving to them all of her property that remained after death. Her heirs are all collateral heirs and ought not now to be heard to complain because the length of plaintiffs' services may not have been as long as contemplated by the parties. *Harlan* v. *Harlan*, 102 Iowa, 701 (72 N. W. 286); *Lothrop* v. *Marble*, 12 S. D. 511 (81 N. W. 885, 76 Am. St. Rep. 626).

"In those cases, as in the case at bar, money was

not made the standard of compensation for the services performed, and likewise the term of service being dependent upon the length of a human life, was in those cases, as in the case at bar, a matter of uncertainty. If the term had extended over many years instead of only a few weeks, the defendants doubtless would not be here complaining. They have no greater reason to complain because Mrs. Haise died very much sooner than could be or was anticipated by any one."

The decree is affirmed.

McDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.