FOJTIK *v.* LAWSON.

1. SPECIFIC PERFORMANCE—MARRIED WOMAN'S CONTRACT FOR HOUSE-
KEEPING AND NURSING SERVICES—EVIDENCE.
    In married woman's suit for specific performance of elderly
    man's agreement to leave her his house and lot and furnish-
    ings in return for housekeeping and nursing services for re-
    mainder of his life, evidence was sufficient to support findings
    of trial judge who decreed for plaintiff.

2. SAME—COPIES OF LOST OR DESTROYED WILL—EVIDENCE OF CON-
TRACT TO LEAVE PROPERTY.
    In married woman's suit for specific performance of agreement
    to leave plaintiff a house and its contents, brought against
    administrator of estate of aged man for whom plaintiff had
    rendered housekeeping and nursing services while occupying
    his home with her husband and child, claim that production
    of copies of lost or destroyed wills in which it appears plain-
    tiff was to receive such property, as well as testimony on part
    of disinterested witnesses that decedent had told them plain-
    tiff was to get the place, was an indirect method of proving a
    lost or destroyed will was without merit where simply intro-
    duced to show agreement under which parties operated.

3. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
CEASED—SPECIFIC PERFORMANCE—MARRIED WOMAN'S CONTRACT
FOR HOUSEKEEPING AND NURSING SERVICES—HUSBAND AS WIT-
NESS.
    After plaintiff and her husband had made an agreement with
    nonrelated elderly man that in return for her housekeeping
    and nursing services she was to get house and lot and furnish-
    ings under a will that was exhibited to them, the husband
    had no interest in the property or agreement, hence was not
    disqualified from testifying in later suit against admin-
    istrator of estate of elderly man for specific performance of
    the agreement by statute barring testimony by an adverse
    party or agent as to matters equally within knowledge of de-
    ceased (3 Comp. Laws 1929, § 14219).

As to law on services tortiously acquired, see Restatement, Resti-
tution, § 134.

4. STIPULATIONS—APPEAL AND ERROR—ADDITION OF HEIRS—PARTIES.
   In specific performance suit involving title of real estate
   formerly owned by an elderly man, upon filing of stipulation
   adding persons represented as all of decedent's heirs as real
   parties in interest and that Supreme Court should proceed
   upon record made, decree entered in affirmance of decree
   awarding property to plaintiff bound such named heirs.

Appeal from Washtenaw; Sample (George W.),. J. Submitted October 16, 1942. (Docket No. 14, Calendar No. 42,035.) Decided December 23, 1942.

Bill by Elizabeth Fojtik against John D. Lawson, as administrator of the estate of Patrick H. Nolan, deceased, for specific performance of an oral contract to convey land. Decree for plaintiff. Defendant appeals. Affirmed.

*William M. Laird,* for plaintiff.

*Oliver J. Golden* (*Thomas E. Griffin* and *Victor H. Weipert,* of counsel), for defendant.

BUTZEL, J. Elizabeth Fojtik filed a bill against defendant John D. Lawson, administrator of the estate of Patrick H. Nolan, deceased, for the specific performance of a contract alleged to have been made by Nolan in his lifetime to convey to plaintiff a house and lot in Milan, Michigan, together with the contents of the house. The property was appraised in Nolan's estate at $2,500, the contents at $50. Other property in the estate not involved in this litigation was appraised at $9,000.

The evidence introduced supported the findings of the circuit judge who decreed specific performance. The facts briefly stated are as follows: Frank Fojtik, Jr., the husband of plaintiff, was permitted to testify that decedent, an aged widower, asked Mr. and Mrs. Fojtik to come and live with him, and that

he would make it right with them if they would do so; that they had theretofore figured either on building a house or buying a farm, but that they accepted Nolan's offer instead. On December 24, 1932, they moved into Nolan's home, where plaintiff looked after him, did the washing, baking and cooking and housework. Plaintiff also did the work of a nurse, keeping Nolan and his bed clean, since he was suffering from incontinence, as medically defined. Later, Nolan suffered a stroke and required plaintiff's constant care and attention. In 1935, the Fojtiks demanded some kind of settlement and Nolan said to plaintiff and her husband that he intended to give them the house and furniture, that he could not take it with him, and thereafter stated that he had made a will to that effect at the office of his attorney. The attorney later showed them Nolan's fully executed will which, in the first and second paragraphs, provided that the house and lot and furniture were to go to Elizabeth Fojtik, the plaintiff. This apparently satisfied all parties, and Mrs. Fojtik continued to look after Nolan while her husband worked on a farm and, subsequently, in an automobile factory. Defendant admits that such a will was made on November 17, 1936, as well as a later one on April 5, 1939, containing similar provisions as to plaintiff. At the time that the second will was drawn, decedent's nephew submitted a document to Mr. Fojtik for signature. It stated that decedent, plaintiff and her husband occupied the house and that all of them had furnished some of the food, light, heat and other necessaries used by them, that plaintiff and her husband had occupied the house rent free, and that such occupation and the provisions made in decedent's last will should be in full payment of all claims. Fojtik testified that he refused to sign the agreement because the statement in regard to the division of the expenses was

untrue. He has made no claim of any kind against the Nolan estate. Fojtik testified that Nolan also spoke to him about the agreement his nephew had submitted. Two other witnesses testified that decedent had told them that plaintiff was to get the house. One testified that decedent made the statement to her that "Betty (plaintiff) get that house, that property, because she keep me good." Another witness testified that decedent told him that he had a paper made up "in case I die, will that property belong to Betty." There is no merit to appellant's claim that this was an indirect method of proving the lost or destroyed will, as plaintiff made no such claim. Copies of the will were introduced solely to show the agreement.

The only other ground for appeal that merits discussion is whether the testimony of Frank Fojtik, husband of plaintiff, was admissible under what is so frequently termed the "dead man's law" or "the equally within the knowledge of the deceased" statute. Section 14219, 3 Comp. Laws 1929 (Stat. Ann. § 27.914). We adhere to the statute that prohibits testimony equally within the knowledge of deceased by the adverse party or by his or her agents. The courts, particularly in recent years, have shown no disposition to extend the scope of the statute by strict construction. In fact, textbook writers have questioned whether the statute has not a tendency to cause more injustice than it prevents, and whether under certain circumstances, with proper warning, such evidence should not be received. Connecticut, Virginia and Oregon have such provisions. See 2 Wigmore on Evidence (3d Ed.), p. 695, § 578; 5 Jones, Commentaries on Evidence (2d Ed.), pp. 4254-4255, § 2225. Any change in the law must come from the legislature. In the instant case, however, the real agreement dates from the day when Nolan was asked to make a definite contract. At that time

he referred to the will leaving the house and lot and furnishings to Mrs. Fojtik, and the contents of a fully executed will in accordance with the agreement were disclosed to plaintiff and her husband. From that time on, the latter had no interest in the property or the agreement and he was not disqualified from testifying. In *Re De Spelder's Estate,* 181 Mich. 153, we held the husband of claimant was competent to testify as to conversations overheard between his wife and Mrs. De Spelder in which the latter promised his wife to make "it good with you in my will," the witness assenting to such an arrangement, since he was not a party of interest under the statute. In *Hiles* v. *First National Bank at Flint,* 237 Mich. 278, we had somewhat similar facts as in the instant case. Claimant alleged that decedent agreed that in consideration of claimant and her husband closing their home and coming to live with decedent and caring for her as long as she lived, she would transfer all her property on her death to the wife. It was held that inasmuch as the husband had no present interest in his wife's property, he was not disqualified from testifying as to the existence of such an agreement. The bill, however, was dismissed owing to the lack of clear and convincing proof of such alleged oral agreement. In *Salsbury* v. *Sackrider,* 284 Mich. 493, a bill was filed for specific performance of an oral agreement between plaintiff and her father, in which the latter agreed that if plaintiff and her husband would come to her father's farm and make a home for him, he would give her the farm. It was held that the husband had no such interest so as to exclude his testimony under the statute, that the contract was one between deceased and plaintiff, and, therefore, plaintiff's husband was not an opposite party as defendant claimed. *Mayes* v. *Central Trust Co.,* 284

Mich. 504, involved a bill for specific performance of an oral agreement to convey real estate alleged by the plaintiff to have been entered into with her mother in consideration of care and support of the mother during her life or at such time as she would need it. It was held that the contract was proved by evidence that during her lifetime two attempts were made by the mother to have a deed prepared whereby the plaintiff would have the interest of a joint grantee, that the mother made representations to numerous parties that she had given the plaintiff the property, and that the mother was to have a home there. There was also the testimony of a son of the mother that he had discussed the agreement with her after it had been entered into. It was claimed, however, that the testimony of plaintiff's husband was improperly admitted. We held that the husband had no such interest as would bar him from testifying as an opposite party.

In *Hartle* v. *Keefer's Estate,* 260 Mich. 188, cases are reviewed and distinction made between simply furnishing room and board to a person, a claim in which a husband would have an interest, and claims arising from personal services rendered by a wife for which she could demand payment. This case comes under the latter classification and plaintiff's husband was not excluded from testifying under the statute.

After the submission of this case to this court, we called the attention of the respective counsel to the fact that the heirs of the Nolan estate had not been made parties and that the question arose whether any decree would be binding on them as necessary parties, they being the owners of the real estate upon the death of Patrick H. Nolan, who died intestate and there apparently being no unpaid debts.

It was suggested to counsel that the case be remanded for the purpose of making the heirs parties so that they might have their day in court or that they cause their appearance to be entered in this court and that they might stipulate if they cared to that they be bound by any decree that might be rendered.

A stipulation has been duly filed in this court joining as parties defendant Mary E. Cottingham, niece of the deceased, Helen H. Hasbrook, niece of the deceased, Maude Susan Nolan, niece of the deceased, Elizabeth McKeogh, grand niece of the deceased, and Oliver Nolan, grand nephew of the deceased, represented to be all the heirs at law of Patrick H. Nolan; also that their attorney forthwith file his appearance in this court for and on behalf of these heirs; also that this court should proceed with the disposition of the case on the present record but with all of the heirs joined as defendants, and that decree entered herein would be binding upon all defendants, the estate of the deceased and all of the heirs named hereinbefore as parties defendant. These parties appear to be the sole heirs at law in the petition for administration printed in the record.

In accordance with such stipulation, a decree may be entered affirming the decree rendered in the trial court but also making it binding upon all heirs hereinbefore named. Plaintiff will recover costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.